It KIRBY, Judge.
On November 9, 2000, the defendant, Matthew Moore, was charged with possession of cocaine with intent to distribute in violation of La. R.S. 40:967(A). At arraignment on November 16, 2000, he pleaded not guilty. After a hearing on December 12, 2000, the court found probable cause and denied the motions to suppress the evidence and the statement. A twelve-person jury found the defendant guilty of the responsive verdict of attempted possession of cocaine after trial on March 19, 2001. On May 21, 2001, he was sentenced to serve thirty months at hard labor. The State filed a multiple bill that same day charging Moore as a third felony offender, and the defendant pleaded not guilty. On July 19, 2001, after a hearing in which the State proved the charge, the trial court vacated the original sentence and sentenced the defendant to life imprisonment without benefit of parole, probation, or suspension of sentence under La. R.S. 15:529.1(A)(l)(b)(ii). The defendant’s motion to reconsider sentence was denied, and his motion for an appeal was granted.
At trial, several police officers testified concerning a search of the defendant’s *522 house.[1] Detective Andre Gilds testified that on August 17, 2000, he ^applied for and received a search warrant for the defendant’s residence at 3938 Jumonville Street. Detective Airy Darensbourg and four other officers executed the warrant about 3 a.m. on August 18th. The detective and his partners gathered the family members other than the defendant into the living room where they remained in the presence of an officer. The officers were told that the defendant was upstairs asleep. They went into the room where he was sleeping and found a clear plastic bag containing a white rock-like substance. The defendant awoke and was given his rights and handcuffed. He stated that the cocaine belonged to him.
Officer Anthony Mayfield, Detective Darensbourg’s partner, testified that he awakened the defendant and ordered Moore to get up. In searching the room for a weapon, the officer picked up blue jeans from the floor and found a bag of what proved to be crack cocaine that fell from the right front jeans pocket; he also found $23.26 in the left front pocket and an identification card in a back pocket. In a dresser drawer, the officer discovered nineteen small green plastic Ziploc bags commonly used to package narcotics. The defendant was transported to the police station, and the officer asked him if he wanted to make a statement, after first advising him of his rights and having him sign a form indicating he understood his rights. The defendant replied by asking if anyone in his family would be arrested if he made a statement, and when he was told they would not, he made a statement that was read at trial. In the statement he said that he purchased an “eight ball” of cocaine from an unknown person in order to “make extra money.” He denied using cocaine himself.
Officer Harry O’Neal, an expert in the analysis and identification of controlled dangerous substances, testified that he prepared the crime lab report and tested the off-white material found in the blue jeans. In several conclusive testing | .¡procedures, the material proved to be cocaine. The plastic bag and the cocaine weighed 2.8 grams.
Mr. Leroy Bickham, the defendant’s stepfather, testified that he was at home when the arrest occurred. He reported that the police officers took his brother-in-law, Aaron Delaney, to the police station with Matthew Moore. Mr. Delaney was released and returned home after about an hour and a half.
Matthew Moore, the twenty-nine year old defendant, told the court that he worked for Delta Construction prior to his arrest. He testified that on the night in question the officers woke him and took him downstairs; they threatened to lock up his entire family if he did not tell them about a recent homicide. When he said he knew nothing, the officers threatened that his mother and young niece would be arrested. He was taken to the police station where he saw his uncle. Defendant stated that he was frightened when the officers were questioning him. He testified:
I was afraid.Officer Mayfield asked me about the statement and I told him I wasn’t giving up no statement. From then, they went to shoving me in my face, they went to talking to me like.... I didn’t even exist.... [T]he truth is I didn’t have no drugs. They was after me, they wanted me, they was trying to frame me for something I had no knowledge of.
*523 During the questioning he said that was hit about his face, head, and upper body so that he was sore the next day. He finally signed the statement because he thought his life was in danger. Moore admitted to having a prior conviction for manslaughter, and under cross-examination he acknowledged that originally the charge was first degree murder and he pleaded guilty to the reduced charge.[2] He |4also admitted convictions for attempted first degree murder, armed robbery, first degree kidnapping, possession of stolen property worth more than $500, and possession of a firearm by a convicted felon. In 1990, he was convicted of possession of cocaine and marijuana. He maintained that during the time at his house and at the police station, none of the officers read the Miranda rights to him.
In rebuttal, Officer Robert Haar testified that he was in the room when Detective Mayfield took a statement from Moore at the police station. Officer Haar typed the defendant’s words. Officer Haar said that no one physically or verbally abused the defendant while he was giving the statement. The officer was present when Officer Mayfield read the defendant his rights and when the defendant signed the statement. The defendant was then given a copy of the statement and asked to read it over, make sure it was correct, and initial each page and sign the back. He did so without making any corrections.
Detective Airy Darensbourg also testified in rebuttal. He said he had no contact with the defendant once they all left the residence. He never threatened the defendant or made any promises to him. Sergeant Charles Little also participated in the execution of the search warrant at 8938 Jumonville Street. He testified in rebuttal that no one forced or threatened the defendant or his family at the residence. Furthermore, the sergeant said the statement was taken from the defendant in his office, which has glass walls, and so anyone could see what was happening during the time when the statement was taken. No force was used against the defendant.
The defendant makes two assignments of error concerning his sentence of life imprisonment without benefits. In his first assignment of error the defendant contends that he was entitled to be sentenced under the amended version of La. lsR.S. 15:529.1, which went into effect about a month prior to his sentencing. Matthew Moore was sentenced on July 19, 2001, and the amended version of the statute went into effect on June 15, 2001. The defendant was sentenced as a third felony offender under La. R.S. 15:529.1(A)(l)(b)(ii) which provided prior to June 15, 2001:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his life, without benefit of parole, probation, or suspension of sentence.
[Italics added]
The defendant’s record fits under this provision because he has a prior attempted first degree murder conviction which is a *524 crime of violence under La. R.S. 14:2(13). However, the current statute provides:
If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) ... or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more or any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his life, without benefit of parole, probation, or suspension of sentence. [Italics added]
Under the revised version, which requires that all three prior offenses meet the standard the statute delineates, the defendant would not be a third offender because neither his prior conviction for possession of cocaine nor his current conviction for attempted possession of cocaine is punishable by ten years or more. Instead, he would be sentenced under La. R.S. 15:529.1(A)(l)(b)(i) which provides for a sentence of not less than two-thirds of the maximum sentence for the conviction |fiand not more than twice the longest possible term prescribed for the first conviction. Thus, under that law, his sentence could be between twenty months and five years.
The defendant acknowledges that under Louisiana jurisprudence the law in effect when the crime occurred determines the penalty. State v. Clark, 391 So.2d 1174, 1176 (La.1980). However, he cites numerous cases from other states and district courts holding that when a penalty for an offense is decreased by legislative amendment after an offense has occurred but prior to sentencing, the offender has the advantage of the amendment unless the legislature has specifically stated otherwise. Unfortunately for the defendant, the statute at issue here specifically states that the amendments “shall only have prospective effect.”
Recently, this Court considered three cases in which defendants convicted of violations of La. R.S. 40:966(C) received suspended sentences and probation even though their offenses occurred prior to June 15, 2001, the effective date of the amendment.[3] State v. Carter, 2001-1560 (La App. 4 Cir. 10/3/01), 798 So.2d 1181; State v. Legendre, 2001-1483 (La.App. 4 Cir. 10/3/01), 798 So.2d 1179; State v. Serpas, 2001-1477 (La.App. 4 Cir. 10/3/01), 798 So.2d 1178. In each case, the State objected and filed a writ application contending that the sentence was illegal. This Court agreed, stating:
It is well settled that the penalty set out in a statute at the time of offense applies. State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99. The fact that a statute is subsequently amended to lessen the possible penalty does not extinguish liability for the offense committed under the former statute. State v. Narcisse, 426 So.2d 118 (La.1983).
State v. Carter, 798 So.2d at 1182; State v. Legendre, 798 So.2d at 1180; State v. Serpas, 798 So.2d at 1179.
In those cases, the sentences were vacated. In the case at bar, because the date of the offense, August 18, 2000, is prior to June 15, 2001, the effective date of the amendment to the statute, we find the trial court did not err in sentencing the defendant. Furthermore, at sentencing the trial court ordered a pre-sentencing *525 report so as “to see how bad of a background this person has, how bad of a person he is” before imposing sentence. Thus, it appears the trial court did consider the ameliorative changes in the law as one factor prior to imposing the statutorily mandated life sentence in this case.
There is no merit in this assignment.
The defendant next argues that his sentence is excessive. He maintains that the amendment to the Habitual Offender Statute indicates that a life sentence is inappropriate for a person with his record.
As a third felony offender, the defendant’s sentence of life imprisonment was the prescribed minimum under La. R.S. 15:529.1 A(l)(b)(ii). Because the Habitual Offender Law has been held constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Johnson, 97-1906, pp. 5-6 (La.3/4/98), 709 So.2d 672, 675. A statutory sentence may be found constitutionally excessive only if it “ ‘makes no measurable contribution to acceptable goals of punishment’, or is nothing more than ‘the purposeful imposition of pain and suffering’ and is ‘grossly out of proportion to the severity of the crime.’ ” Johnson at pp. 6-7, 709 So.2d at 676. This Court has held that a trial court does not err in imposing the sentence mandated by statute where a|sdefendant fails to demonstrate, with clear and convincing evidence, that he is an exception and should, therefore, receive less than the mandatory minimum sentence. State v. Finch, 97-2060, p. 13 (La.App. 4th Cir.2/24/99), 730 So.2d 1020, 1027.
In the instant case, the trial court noted prior to sentencing that Matthew Moore had two prior felony convictions: possession of cocaine in 1990, and attempted first degree murder in 1991. The court further referenced Moore’s additional criminal history of three arrests as a juvenile and nine arrests as an adult, with eight felony and two misdemeanor convictions. He was on probation when he was arrested for the instant offense. The court reviewed the pre-sentencing report and noted that the report recommended he receive the maximum time allowed by law. The court stated:
The violent history that they [pre-sen-tencing report authors] refer to is two murder convictions: one conviction for attempted first degree murder; a second conviction for manslaughter. Two people were victimized as a result of this man’s criminal activity. One of the persons died; the other one survived the attempt [sic] murder. He does have a prior conviction for drugs.
It should be also noted that when the police officers executed the search warrant at his house in this case they were looking for a weapon that they believed to have been used in another murder. And that’s when they found the cocaine in the house.
Unfortunately, again, he has been given probation in the past in 1990. The probation was revoked because of the continued activity, the violent criminal activity. It’s very difficult for me to say that this man does deserve a break or any consideration. I believe the State’s recommendation that the maximum sentence be imposed is a valid one considering his past criminal history.
Although Mr. Moore contends that he does not fit the profile of the habitual offender, he has a long and violent record, and we find that he is the type of offender the Habitual Offender Law was tailored to control. Matthew Moore, who | flwas thirty years old at sentencing, produced no evidence or argument of mitigating factors that would mandate a reduction of the sentence below the statutory minimum. *526 Johnson, 97-1906 at p. 11, 709 So.2d at 678. Under these facts, the statutory minimum sentence of life imprisonment was not shown to be constitutionally excessive.
Accordingly, for reasons cited above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The police were searching for a weapon used in a crime having nothing to do with this charge against Moore; the weapon was not found in the defendant's house.

. Manslaughter is not one of the crimes named in the multiple bill. (Attempted first degree murder and possession of cocaine are the prior offenses listed in the multiple bill). At sentencing the judge, upon reviewing a pre-sentencing report, referred to a manslaughter conviction.

. At the time the offenses occurred La. R.S. 40:966(C) restricted the benefits of probation and suspension of sentence. However, prior to the sentencings the legislature amended the statute by deleting the words "without benefit of probation or suspension of sentence.” Acts 2001, No. 403.