h MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
Defendant Travis S. Everidge was charged by bill of information on 31 October 2000 with possession of cocaine in an amount twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967(C) & (F). Defendant pleaded not guilty at his 6 November 2000 arraignment. The trial court denied defendant’s motion to suppress the evidence on 15 November 2000. On 23 April 2001, the trial court declared a mistrial. Defendant was found guilty as charged on 19 July 2001, following a two day jury trial. The trial court denied defendant’s motion for new trial on 23 August 2001, and sentenced him to ten years at hard labor. The trial court denied defendant’s motion to reconsider sentence and granted defendant’s motion for appeal. On 15 October *1199 2001, defendant was adjudicated a second-felony habitual offender. After defendant waived all legal delays, the trial court vacated his original sentence and re-sentenced him to thirty years at hard labor. Defendant filed a motion to reconsider sentence. The trial court held an eviden-tiary hearing on 9 November 2001, and the trial court denied the motion to reconsider on 7 December 2001.
| STATEMENT OF FACTS
New Orleans Police Detective Jeffrey Vappie and his partner Officer Corey Robinson arrested defendant on the evening of 14 October.[1] They observed defendant standing approximately fifteen feet away from them, near a store at the corner of Sere[2] and Gibson Streets. Defendant, who had his back to the officers, was engaged in a hand-to-hand transaction with another individual. When the officers turned onto Sere Street, the other individual ran toward St. Bernard Avenue, while defendant ran past the police cruiser into the St. Bernard Housing Development. Det. Vappie gave chase. Defendant clutched his side as he ran, leading Det. Vappie to believe that he was in possession of a firearm. Det. Vappie maintained sight of defendant at all times. He kept reporting his position to Officer Robinson, who was in the police cruiser. Defendant ran past the police cruiser again, and Officer Robinson drove behind him, finally exiting and apprehending him. Det. Vappie came up to find Officer Robinson attempting to handcuff defendant. Defendant was holding currency in his left hand. Officer Robinson was holding some narcotics.
Det. Vappie admitted on cross-examination that he never saw defendant in possession of cocaine. He was present when defendant was searched at Central Lockup, and said no cocaine or crack pipes were found on him. Det. Vappie confirmed that after defendant’s arrest his family members came to the scene and asked about defendant’s money. Det. Vappie said he did not recall previously stating that defendant put something in his front pocket when the officers first saw him. Det. Vappie was asked to read something to himself, and was then asked |3again by defense counsel whether he recalled saying something about defendant’s front pocket. Det. Vappie replied that he probably said it, that it was a long time ago. Det. Vappie replied in the negative when asked whether he saw defendant put his hands into his pockets during the chase.
New Orleans Police Officer Corey Robinson testified that he observed defendant hand a “rock” to the other individual, who gave defendant currency in exchange. Officer Robinson said that after tackling defendant, he retrieved a bag containing six rocks of a white substance from defendant’s right hand, which he identified as evidence. He said defendant also had $789 in currency in his left hand. After defendant was placed in the police car, his mother approached and inquired about defendant’s money. Defendant’s mother also came to the police station to inquire about the money. Officer Robinson confirmed on cross-examination that no gun was recovered in connection with the case.
Karen Lewis-Holmes was qualified by stipulation as an expert in the analysis and identification of controlled dangerous substances, and in the practices and procedures of the New Orleans Police Department Crime Laboratory. Ms. Lewis-Holmes testified that the contents of the *1200 white plastic bag weighed 34.6 grams. Her test results were positive for cocaine. Ms. Lewis-Holmes testified that the six rocks were contained in separate small plastic bags. She admitted that she did not break off any part of the rocks for testing, but did four tests of the crumbs or residue that were in the bags. She explained that the substances crumble and leave traces in the bags. She stated that the larger plastic bag was not submitted for fingerprint analysis.
Lisa Pierce, defendant’s mother, testified that she was visiting her mother in the St. Bernard Housing Development. Mrs. Pierce had taken a loan to pay her 14house note. She telephoned her brother to take defendant and her money home. Subsequently, some children told her that police were beating her son. Mrs. Pierce went to the scene, where she observed Det. Vappie with his foot on defendant’s back. She claimed that she went to ask what happened, and followed defendant and the officers to the police station. She asked for return of what she alleged was the money to pay her house note. Mrs. Pierce identified what she said were papers for her loan, which document defense counsel introduced in evidence. Mrs. Pierce said her loan took effect on 11 October 2000, but she did not pick up the money until the next day.
Mrs. Pierce testified on cross-examination that she was on St. Bernard Avenue when she gave the money to defendant to give to her brother so they could take it home. Mrs. Pierce stated on cross-examination that her house note was $477.00, but that if it was late it was $519.00. She claimed to have cashed the loan check at the bank, where she received $800 in twenty-dollar bills. The $789 recovered from defendant was in multiple denominations— $560 in twenty-dollar bills, $130 in ten-dollar bills, $90 in five-dollar bills, and $9 in one-dollar bills. Mrs. Pierce confirmed that she had spent $11 at the store. Mrs. Pierce was asked on cross-examination when the $800 in twenty-dollar bills had been broken down into the multiple denominations, and she replied that it had been done at the store.
Mrs. Willie Morris, defendant’s grandmother, testified that Lisa Pierce was with her in her apartment in the St. Bernard Housing Development when Lisa mentioned that she had taken out a loan to pay her house note. Mrs. Pierce allegedly mentioned that she had forgotten to leave the money at her residence. Mrs. Pierce asked defendant to go to the grocery store to ask Mrs. Pierce’s brother to take defendant to Ms. Pierce’s home to pay the money.
| sRenatta Robin, defendant’s girlfriend, testified that on the night defendant was arrested she was sitting on her grandmother’s porch in the St. Bernard Development. She observed two police officers cause defendant to fall, and then start beating him. She later saw Lisa Pierce come to the scene.
Defendant testified that he was on his way to the store to meet his uncle and take home his mother’s money. He fled from police because he had his mother’s money, and believed police would take it from him. He testified that he had seen this done before. The money was in his front right pocket. He said he first saw the bag of cocaine after he was apprehended, when the officers brought it from around the corner of the building. Defendant admitted a prior conviction for illegal use of a firearm. He pleaded guilty to that offense because he was guilty. Defendant admitted that he complained to EMS personnel only that he had facial pain from falling on the grass, and that he had not needed to go the hospital. He admitted that he did not have any bruises or signs of trauma.
*1201 Lisa Pierce was recalled as a witness. She testified that she went home after testifying earlier and retrieved a payment book containing coupons she mails off with her house payments. On cross-examination, the prosecutor confirmed that Ms. Pierce mailed the coupons, inferring that she also mailed her payments.

ERRORS PATENT

A review of the record reveals one error patent. When the trial court originally sentenced defendant, it sentenced him immediately after having denied his motion for new trial, and did not wait the requisite twenty-four hours as required by La.C.Cr.P. art. 873. There is no indication that defendant waived the delay. However, defendant was subsequently adjudicated a second-felony habitual | ^offender, his original sentence was vacated, and he was re-sentenced. In such a case the defendant is not prejudiced by the failure to observe the delay in connection with the original sentencing. State v. Sam, 99-0300, pp. 7-8 (La.App. 4 Cir. 4/19/00), 761 So.2d 72, 78.
ASSIGNMENT OF ERROR: The evidence is insufficient to support defendant’s conviction.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. ... In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438.
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
7 Defendant was convicted of possession of cocaine in an amount twenty-eight grams or more, but less than two hundred grams, in violation of La. R.S. 40:967(C) & (F). To convict for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed it. State v. Handy, 2000-0051, p. 4 (La.App. 4 Cir. 1/24/01), 779 So.2d 103, 104, writ denied, 2001-1896 (La.3/28/02), 812 So.2d 651. Guilty knowledge is an essential element of the offense of possession of a controlled dangerous substance. State v. Ricard, 98-2278 and 99-0424, p. 7 (La.App. 4 Cir. 1/19/00), 751 *1202 So.2d 393, 397. Knowledge need not be proven as fact, but may be inferred from the circumstances. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162.
Defendant first argues that the evidence was insufficient as to the amount of cocaine allegedly in his possession. Defendant correctly notes that criminalist Karen Lewis-Holmes testified that she did not test any of the six rock-like substances found in defendant’s possession at the time of his arrest. Ms. Lewis-Holmes tested four samples of the crumbs that came from the individual bags that held the rocks. She weighed all of the cocaine to get a total weight of 34.6 grams, and presumably tested the crumbs or dust afterward. Defendant argues that it is “entirely possible” that the six rocks were “bunk,” meaning false or fake crack cocaine. However, we note that defendant offered no evidence that the substance was not cocaine to rebut the State’s evidence.
The record contains evidence that two police officers observed defendant, engage in a hand-to-hand transaction with another individual. One officer observed the other individual hand defendant currency, and defendant hand a white object to him. When the men saw the police, both fled. Det. Vappie engaged in an píntense foot chase of defendant through the St. Bernard Housing Development, but was unable to catch him. Officer Robinson eventually tackled defendant, who resisted being handcuffed. Defendant had $789 in one hand, and the cocaine in the other, according to Officer Robinson. All of the contraband seized, the six rocks and crumbs, weighed 34.6 grams. Four samples of the crumbs tested positive for cocaine. Ms. Lewis-Holmes pointed out that the plastic bag shown to her at trial had the rocks in it as well as crumbs, stating that the crumbs or pieces break off of the rocks. Defendant’s story that the money was for his mother’s house note was reasonably suspect. Defendant’s mother testified that she received $800 in twenty-dollar bills from a credit union or bank, yet defendant was in possession of only $560 in twenty-dollar bills, with the rest in ten, five and one-dollar denominations. It would not be unreasonable for a trier of fact to reject her explanation that she received the other denominations when she went to the store, where she spent only eleven dollars.
Viewing the entirety of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was a seller of crack cocaine, and that all six of the individually wrapped white rock-like substances he possessed at the time of his arrest, and the crumbs or pieces in the individual bags, were in fact cocaine. Defendant’s hypothesis of innocence — that some of the white crumbs or pieces in the six individuál bags containing the rocks were cocaine, but that the rocks might have been fake crack cocaine — is not reasonable.
Defendant further suggests that Officer Robinson’s testimony is extremely suspicious as to the sequence and timing of the events surrounding the officer’s apprehension of him and recovery of the cocaine. Defendant submits that his story pthat Officer Robinson simply found some cocaine in the area and assumed it was defendant’s is more believable than the officer’s testimony. Again, viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have rejected defendant’s story and found beyond a reasonable doubt that defendant knowingly possessed the 34.6 grams of cocaine.
There is no merit to this assignment of error.

*1203
SUPPLEMENTAL ASSIGNMENT OF ERROR: Defendant’s sentence is constitutionally excessive.

Defendant was sentenced to thirty years at hard labor, the statutory minimum sentence as a second felony habitual offender convicted of possession of cocaine in an amount twenty-eight grams or more, but less than two hundred grams, based on the law in effect at the time of defendant’s arrest, conviction and sentencing. See La. R.S. 15:529.1(A)(1)(a) (not less than one-half the longest term provided); La R.S. 40:967(F)(l)(a) (possession of twenty-eight grams or more, but less than two hundred grams, a sentence of not more than sixty years).[3]
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677. However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual 110offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675. Defendant must present substantial evidence to rebut the presumption of constitutionality, showing by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 97-1906 at p. 8, 709 So.2d at 677. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 97-1906 at p. 9, 709 So.2d at 677.
The trial court held a hearing on defendant’s motion to reconsider' sentence at which defendant’s mother testified that defendant was a good child, and that she was a single parent until defendant was “older”. Defendant would do whatever he could for her, her sister, her brother and others. Defendant’s girlfriend bore his child when he was seventeen years old. Mrs. Pierce testified that defendant was supporting the child, and was a good father. Defendant was a Catholic who attended church. He left school in the eleventh grade to work to support his infant. Mrs. Pierce testified that her husband broke his hip and wrist at work, and that she needed defendant to help her.
Defendant’s grandmother testified that defendant was a good child and always willing to help the elderly with things around their homes or go to the store for them.
Renatta Robin, the mother of defendant’s child, testified that defendant was “there for her” and their child before and after she gave birth. Defendant never Indented paternity or failed to provide support for his child. She believed defendant dropped out of high school to help her with their child.
The trial court declined to reconsider defendant’s sentence, stating that nothing raised by defendant established the exceptional circumstances required by Johnson. The court rejected defendant’s argument that a 2001 amendment to La. R.S. *1204 40:967(F)(l)(a),[4] reducing the maximum sentence for possession of cocaine in an amount more than twenty-eight grams, but less than two hundred grams, from sixty years to thirty years, should be a consideration in defendant’s sentencing. Under the amended La. R.S. 40:967(F)(l)(a), defendant, sentenced as a second-felony habitual offender under La. R.S. 15:529.1(A)(l)(a), would have faced a minimum sentence of fifteen years, one-half of the minimum thirty-year sentence imposed by the trial court.
The amendments effected by Acts 2001, No. 403, § 4, eff. June 15, 2001, including the one to La. R.S. 40:967(F)(l)(a), are prospective only in application. Section 6 of Act 403 provides, “[T]he provision of this Act shall only have prospective effect.” The trial court cited three decisions by this court involving defendants sentenced under other drug laws that were amended by Act 403, with the amendments taking effect after the dates of their offenses. The three decisions reiterated the general principle that the statute in effect at the time of the commission of the offense governs. State v. Carter, 2001-1560 (La.App. 4 Cir. 10/3/01), 798 So.2d 1181; State v. Legendre, 2001-1483 (La.App. 4 Cir. 10/3/01), 798 So.2d 1179; State v. Serpas, 2001-1477 (La.App. 4 Cir. 10/3/01), 798 So.2d 1178.
 ip. In the instant case, the trial court cited the above cases in rejecting defendant’s suggestion that Act 403’s amendment of La. R.S. 40:967(F)(1)(a) could be an equitable factor in assessing the reasonableness of the sentence under State v. Dorthey, 623 So.2d 1276 (La.1993). The court informed defendant that it regretted its decision denying his motion to reconsider sentence, but that it was required to follow the law. This was error insofar as the trial court believed it was barred by law from considering the dramatic reductions in sentences for drug offenses effected by Act 403 as a palliative factor when assessing the reasonableness of a defendant’s sentence under Dorthey. To the contrary, the legislature’s subsequent changes in criminal statutes are relevant sentencing considerations. State v. Jones, 99-2207, p. 6 (La.1/29/01), 778 So.2d 1131, 1134. In State v. Rice, 2001-0215 (La. 4 Cir. 1/16/02), 807 So.2d 350, writ denied, 2002-0513 (La.9/13/02), 824 So.2d 1186, this court held that it was error for a trial court to refuse to consider a Dorthey reduction of the statutory mandatory life sentence, stating that the enactment of Act 403 was a “signal that our legislature desired to revisit harsh sentencing in our state .... ” 2001-0215, p. 7, 807 So.2d at 354. In State v. Moore, 2001-2105 (La.App. 4 Cir. 2/13/02), 809 So.2d 520, this court rejected defendant’s argument that he should have been sentenced under a provision of the Habitual Offender Law amended by Act 403, but noted that it appeared the trial court had considered the ameliorative change in the law as one factor before imposing sentence.
There is merit to this assignment of error.
1 ^CONCLUSION AND DECREE
For the foregoing reasons, we affirm defendant’s conviction and adjudication as a second-felony habitual offender, vacate his sentence and remand the case for re-sentencing in accordance with the views expressed herein.
CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
ARMSTRONG, J., CONCURS.

. No year was given. Defendant was charged with committing the crime on October 14, 2000. Trial was held in 2001.

. The transcript incorrectly spells the name of Sere Street as “Sear.”

. Defendant could have been fined from fifty thousand to one hundred thousand dollars under La. R.S. 40:967(F)(l)(a).

. Acts 2001, No. 403, § 4, eff. June 15, 2001.