NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1302

STATE OF LOUISIANA

VERSUS

ALFONZO JEWADE SEGURA

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 09-1561
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED.

J. Phillip Haney
District Attorney
Sixteenth Judicial District
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
COUNSEL FOR APPELLEE:
    State of Louisiana

**Walter James Senette, Jr.**
**Assistant District Attorney**
**Sixteenth Judicial District**
**500 Main Street 5th Floor, Suite 502**
**Franklin, LA 70538**
**(337) 828-4100**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Harry Daniels, III**
**Daniels & Washington**
**830 Main Street**
**Baton Rouge, LA 70802**
**(225) 346-6280**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Alfonzo Jewade Segura**

**PETERS, J.**

The State of Louisiana (state) charged the defendant, Alfonzo Jewade Segura, by bill of information with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). Following a jury trial, the defendant was found guilty as charged. Subsequently, the defendant was adjudicated a fourth felony offender, and the trial court sentenced him to life imprisonment, without benefit of parole, probation, or suspension of sentence. After the trial court rejected his motion to reconsider his sentence, the defendant appealed asserting four assignments of error. In those assignments of error, he challenges both his conviction and sentence. For the following reasons, we affirm both his conviction and sentence in all respects.

## DISCUSSION OF THE RECORD

On November 6, 2008, a confidential informant contacted the defendant in an effort to purchase crack cocaine from him. The defendant and the confidential informant negotiated the sale of $300.00 worth of crack cocaine and then arranged a meeting for the transfer. The confidential informant, along with Jerath Bessard, a Vermilion Parish Deputy Sheriff working for the Iberia Parish Sheriff's Office as an undercover narcotics agent, arrived at the prearranged location, and a short time later, the defendant arrived in his vehicle. During the entire transaction, Deputy Bessard was "wired," and the transfer of the narcotics was recorded. Deputy Bessard later identified the defendant from a photographic lineup as the person who sold him the crack cocaine.

The defendant's four assignments of error are as follows:

1. Segura was prevented from presenting a defense when the Court prevented him from asking questions regarding the practices of the Iberia Parish Narcotics department.

2. The Court should have ordered the State to disclose the identity of the Confidential Informant.

3. The evidence adduced at trial was insufficient to support the conviction of Distribution of Cocaine.

4. The sentence imposed is excessive for this offense and this offender.

**OPINION**

*Assignment of Error Number Three*

We will address the defendant's sufficiency argument first in the event the defendant is entitled to an acquittal. "When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot." *State v. Hearold*, 603 So.2d 731, 734 (La.1992).

The analysis for a claim of insufficient evidence is well-settled:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

The defendant's primary argument in this assignment of error is that there exists conflicting testimony concerning what was actually purchased from him. He does not challenge any other elements of the offense as set forth in La.R.S. 40:967(A)(1).

2

Deputy Bessard testified that while working undercover in Iberia Parish on November 6, 2008, a confidential informant with whom he was working made arrangements for a purchase of $300.00 worth of crack cocaine from the defendant. The transaction occurred as previously described, and Deputy Bessard received two cellophane bags containing what he understood to be crack cocaine from the defendant in exchange for the $300.00 purchase price. Deputy Bessard testified that he was able to see the defendant clearly. He turned the two cellophane bags over to Deputy Gerald Savoy of the Narcotics Division of the Iberia Parish Sheriff's Office.

Deputy Savoy testified that on November 6, 2008, a known confidential informant contacted him and told him that he had been in contact with the defendant and that the defendant could provide him with a substantial amount of crack cocaine. Agent Savoy then arranged to have Deputy Bessard assist in the investigation.

With regard to the transaction itself, Deputy Savoy explained that Deputy Bessard was outfitted with a listening device so that the transaction could be monitored and that Deputy Bessard utilized a code phrase, "deal done," to indicate the transaction was complete. After the cocaine purchase, Deputy Savoy then met with Deputy Bessard and the confidential informant at an undisclosed location where the two direct participants were debriefed, and the crack cocaine was turned over to Deputy Savoy. Subsequent scientific testing established that the purchased substance was crack cocaine.

The only difference noted between the testimony of the two officers related to the packaging of the crack cocaine, raising the issue of whether the two large pieces or slabs of crack cocaine were in one or two bags. The testimony does not call into question what was purchased—two large pieces or slabs of crack cocaine. No other evidence exists in the record to suggest that anything other than crack cocaine was

3

purchased during the transaction. Accordingly, we find no merit in the defendant's assignment of error relative to the sufficiency of the evidence.

### *Assignment of Error Number One*

In his first assignment of error, the defendant argues that he was precluded from presenting a defense because the trial court prevented him from asking questions regarding the practices of the Narcotics Division of the Iberia Parish Sheriff's Office. The defendant sought the information to challenge the credibility of the agents, specifically information regarding allegations of drug use, burglaries, and stealing evidence.

This issue arose because, on the morning of trial, the defendant filed a motion in limine, seeking to exclude the testimony of Deputy Savoy and another deputy employed in the Narcotics Division. The defendant based his motion on information he claims to have received concerning an internal investigation of the Narcotics Division arising from the alleged misconduct of certain officers. He claimed that he received this information but that he needed more information concerning the investigation to determine if the officers involved in his case were also involved in the internal investigation. Thus, absent any evidence to the contrary, he claims he was entitled to make the assertion that the entire narcotics team, as it was constituted at the time of his arrest, lacked credibility and should not be allowed to testify at his trial.

The state responded to the defendant's motion by asserting that it provided the defendant with all exculpatory or discoverable evidence and that the deputy involved in the internal investigation took no part in the instant case. The state further argued that the defendant should not be allowed to "bootstrap" every narcotics case from the time of his offense to the beginning of the internal investigation simply because one deputy in the narcotics division had committed a criminal offense.

The trial court denied the defendant's motion because he failed to request an *in camera* inspection or hearing on the issue within the year and a half between his first notice of the investigation and the date of his trial. Thereafter, the defendant sought permission to question the deputies concerning their involvement in the internal investigation itself. To that end, the defendant's attorney posed the following question for the court:

> The question that I proposed to the Court as to whether or not it would be appropriate is whether or not I can ask Agent Savoy if he was questioned in the investigation of the narcotics division relevant because that is the same narcotics division that arrested my client and that was the same narcotics division that he was a part of that enacted this operation and I believe that it goes to the credibility of the habit, routine and practice of the narcotic division, it's an exception under Article 406 of the Code of Evidence. I believe it is relevant to prove that the organization conduct within a certain period of time was in conformity with a habit, routine, or practice which we're building a link to in our subsequent question in term of how this operation was done. So I believe that the Article 406 of the Code of Evidence allows us to ask this and in 406 it says, "that the evidence may consist of testimony in the form of opinion or evidence of specific tendencies of conduct sufficient in number to warrant a finding of the habit existed or that the practice was routine" and I took it straight from 406. And I'm hoping it conforms with what we're allowed to do to look at the way this operation was done.

In response, the attorney for the state asserted:

> Judge, I'm simply trying to rely on the ruling you made prior to the beginning of this trial. He brought up these late Motions in Limine, this Instanter Subpoena request and Your Honor ruled that it was too late. We were aware of our obligations under Brady, Kyle and Gigglio. We reviewed the records and found that there was nothing discoverable that was exculpatory or otherwise discoverable under those cases in this particular case. What he's trying to do now is say, okay, I didn't get it that way, I'm going to backdoor it and I'm going to poison the jury pool. I'm going to throw out words like corruption and bad practices and mishandling of evidence and ask questions about this stuff, all of which, one of which the agent answered, he said, no. But you can't unring the bell. He's trying to despite the fact that you ruled that there is nothing that he can't have it, that you denied his request, he's trying to do it in front of the jury, it's completely inappropriate. There are specific ways that you can attack the credibility of the witness and this is not one of them. He can't go on a fishing expedition and throw out all of this [sic] hot button words to try to poison the juries [sic] mind with regard to how the Iberia Parish Sheriff's Office conducted its investigation. He can ask

5

specific questions about how the evidence was handled in this particular case by the witnesses who are involved in this particular case. That's not what he's trying to do. He's trying to boot strap some problem that the Sheriff's Office had with Jerrell Tauzin and the way that he conducted himself to this case, a case that Jerrell Tauzin is not only not involved in, but I think had been convicted by the time that this was committed.

The trial court ruled that the defendant could only question the deputies of the Iberia Parish Sheriff's Office concerning its practices at the time of his offense but not subsequent to that time. The defendant's attorney objected to the trial court ruling, stating the following as a basis for the objection:

> [U]nder 406, the literal reading of 406 allows us to question its relevant [sic] and it allows us to question the conduct of the person or the organization on that 2008 occasion and because of the subsequent investigation that 2008 occasion comes into question in terms of the practice, and that so far we've shown that there's certain documents and things that are having mistakes and we are questioning whether or not things were handled accurately and whether or not they were handled within the confines of policy and procedure, as well as, the law. And that is coming in as we're approaching the nuances and the discrepancies and I believe that those nuances and discrepancies and those habits and routines dove-tails into why we don't have that particular narcotics division anymore, that it's something else now.

On appeal, the defendant refers this court to *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923 (1967), wherein the Supreme Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

The defendant contends that the information sought would show that the narcotics agents were not credible, and the trial court limitation on his ability to question the agents about the narcotics division's habits and practices and the internal investigation denied him an opportunity to place the agents' veracity at issue before the jury.

6

Louisiana Code of Evidence Article 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. The evidence may consist of testimony in the form of an opinion or evidence of specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

In the instant case, the record reflects that the defendant sought to reveal corruption within the Iberia Parish Sheriff's Office that did not involve either Deputy Savoy or crimes occurring within the narcotics division at the time of the offense herein. That being the case, we find that the evidence the defendant sought to introduce at trial was not relevant to the instant case and would have served to unjustly taint Deputy Savoy's testimony of the investigation involving the defendant. Accordingly, we find no merit to this assignment of error.

### Assignment of Error Number Two

Prior to the trial on the merits, the defendant had filed a motion seeking the identity of the confidential informant. The trial court rejected that motion and, in this assignment of error, the defendant argues that the trial court erred in denying that motion.

The defendant acknowledges that the name of a confidential informant is privileged and that disclosure is not warranted unless the confidential informant was highly involved in the transactions supporting the bill of information or indictment. However, citing *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957), and *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000), the defendant maintains that the confidential informant involved herein was in fact highly involved in the transaction, and the failure to

7

disclose the identity in this instance would deny him information essential to a fair trial.

Louisiana Code of Evidence Article 514(A) provides that as a general rule of privilege, "[t]he United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law." However, La.Code Evid. art. 514(C)(3) provides that the privilege will not be recognized if "[t]he party seeking to overcome the privilege clearly demonstrates that the interest of the government in preventing disclosure is substantially outweighed by exceptional circumstances such that the informer's testimony is essential to the preparation of the defense or to a fair determination on the issue of guilt or innocence."

In *Broadway*, 753 So.2d at 815, the court stated:

> A confidential informant's identity is privileged, absent exceptional circumstances. *State v. Oliver*, 430 So.2d 650 (La.1983). However, the privilege is not absolute. The courts use a balancing test for determining when the confidential informant's name must be revealed to the defense. *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *State v. Davis*, 411 So.2d 434, 436 (La.1982). Under this test, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his or her defense.

> When an accused shows that disclosure of the informant's identity is essential for his or her defense, the identity must be revealed. *State v. Davis*, 411 So.2d at 436. However, the burden rests with the accused to set forth concrete reasons why the identity of the informant is crucial to the defense. Thus, the accused "must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence." *State v. Davis*, 411 So.2d at 436-37. When an informant has played a crucial role in the criminal transaction and when his or her testimony is necessary to insure a fair trial, disclosure of the identity should be ordered. *See State v. Theriot*, 369 So.2d 708, 708-09 (La.1979).

In this case, the confidential informant actually set up the narcotics purchase and was present when the transaction occurred. Because he was present at the transfer of the narcotics and money, the defendant argues that the confidential informant's testimony was necessary to question the officer's credibility.

On the other hand, the state contends that the facts do not warrant the disclosure of the informant's identity because he did not directly participate in the exchange of money for cocaine. In support of its argument, the state refers this court to *State v. Coleman*, 97-2802 (La. 4/24/98), 713 So.2d 440, wherein the confidential informant made the initial arrangements for the purchase of narcotics and was present at the time the sale took place, but did not directly participate in the exchange of money between the defendant and an undercover officer. The supreme court found, "[t]his case is therefore not one in which, taking away 'evidence of the participation of the confidential informant in the events . . . the evidence would have been wholly insufficient to have established that defendant was a principal to the crime of distribution." *Id.* at 441-42 (quoting *State v. Fontenot*, 524 So.2d 867, 869 (La.App. 3 Cir.1988)). Although the informant may have been in a position to confirm or deny the critical events described by the undercover officers, the court concluded that, "'mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required' for disclosure of a confidential informant's identity. *United States v. Jiles*, 658 F.2d 194, 197 (3rd Cir.1981), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 465 (1982); [*State v.*] *James*, 396 So.2d [1281] at 1284 [La.1981]." *Id.* at 442.

Given the facts of the matter now before us, we find the holding in *Fontenot* to be controlling. We find no merit in this assignment of error.

### *Assignment of Error Number Four*

In his final assignment of error, the defendant argues that his life sentence as an habitual offender is excessive considering he has never been convicted of a crime of violence. As such, he maintains that he is not the kind of offender for which a maximum sentence is reserved.

The defendant was sentenced as a fourth felony offender pursuant to La.R.S. 15:529.1(A)(1)(c)(ii), which, at the time of this offense, read in pertinent part as follows:

> If the fourth felony and two of the prior felonies are felonies defined as a . . . violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person *shall* be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

(Emphasis added.)

The defendant's three prior felony convictions included two convictions for possession of cocaine with the intent to distribute and one conviction for unauthorized entry into an inhabited dwelling. Both of the prior narcotics convictions were punishable by imprisonment for twelve years or more. Cocaine is a Schedule II controlled dangerous substance as defined in La.R.S. 40:964(A)(4), and La.R.S. 40:967(B)(4)(b) provides a maximum penalty of thirty years at hard labor for possession with intent to distribute that controlled dangerous substance. That same statute provides a maximum of thirty years at hard labor for distribution of cocaine. Thus, the fourth felony and two of the prior convictions satisfy the requirements of La.R.S.15:529.1(A)(1)(c)(ii), and the trial court sentenced him to the sentence mandated by statute.

10

In *State v. R.R.*, 09-1410, pp. 10-11 (La.App. 3 Cir. 5/5/10), 37 So.3d 501, 508 (alterations in original), the supreme court noted that in the context of an habitual offender proceeding:

> We agree with the defendant that the supreme court has recognized situations where deviation from a mandatory sentence is allowed. In *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La.1993) (footnote omitted), the supreme court noted in the context of a habitual offender proceedings:
>
> > "If, in this case when defendant is ultimately sentenced, the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no 'measurable contribution to acceptable goals of punishment' or that the sentence amounted to nothing more than 'the purposeful imposition of pain and suffering' and is 'grossly out of proportion to the severity of the crime,' he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive."
>
> In *State v. Johnson*, 97-1906 (La.3/4/98), 709 So.2d 672, the trial court deviated from the habitual offender sentencing provisions and sentenced a fourth felony offender to thirty months at hard labor instead of the mandatory twenty years. The supreme court began its analysis by noting that "[t]he Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct" and that sentences provided for by the legislature are "presumed to be constitutional." *Id*. at 675. The supreme court went on to note that "[o]n the other hand, the judiciary has the authority, *in the rare case*, to declare a sentence within these statutory limits excessive *under the facts of a particular case*." *Id*. at 676 (emphasis added). It concluded that:
>
> > [T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
> >
> > > [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

> *[State v.] Young*, 94-1636 at pp. 5-6 [(La.App. 4 Cir. 10/26/95),] 663 So.2d [525,] 528 (Plotkin, J., concurring).

*Id.*

The supreme court expanded this holding to all sentences in *State v. Fobbs*, 99-1024 (La.9/24/99), 744 So.2d 1274.

We find that the defendant has failed to show, by clear and convincing evidence, that he is exceptional. Therefore, he has failed to rebut the presumption that his mandatory life sentence is constitutional. Accordingly, we find no merit to this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction and the sentence imposed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rules 2-16.2 and 2-16.3, Uniform Rules—Courts of Appeal.