709 So.2d 672 (1998)
STATE of Louisiana
v.
Walter JOHNSON.
No. 97-KK-1906.
Supreme Court of Louisiana.
March 4, 1998.
Concurring Opinion March 6, 1998.
Rehearing Denied April 3, 1998.
*673 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, District Atty., Lisa B. Schneider, New Orleans, Patrick L. Banks, Baton Rouge, for applicant.
Arcenious F. Armond, Jr., Gretna, for respondent.
Concurring Opinion of Justice Lemmon, March 6, 1998.
VICTORY, Justice.[*]
We granted writs of certiorari in this case[1] to reexamine the issue of when State v. Dorthey, 623 So.2d 1276 (La.1993), permits a downward departure from the mandatory minimum sentences in LSA-R.S. 15:529.1, the Habitual Offender Law.

FACTS AND PROCEDURAL HISTORY[2]
On Christmas Day in 1994, New Orleans Police officers Gillard and Rousseve were *674 searching for a wanted subject at a business on North Broad Street. After getting consent to search the back rooms of the business, Officer Rousseve entered one of the rooms. When he entered, he saw Walter Johnson lighting a crack pipe. A search incident to arrest yielded a bag of marijuana and additional drug paraphenalia.
Johnson was charged with possession of cocaine and possession of marijuana. At a bench trial Johnson was found guilty of both charges. The state then filed a habitual offender bill to which Johnson pled guilty.[3] As a fourth offender, the trial court noted that the mandatory minimum sentence was twenty years, but departed from this mandatory minimum sentence and sentenced Johnson to thirty months. The court stated that it departed from the minimum mandatory sentence because all of Johnson's prior convictions were non-violent, and although the instant crime for which Johnson was convicted was technically possession of cocaine, it viewed it as merely the possession of a residual amount of cocaine. Given these reasons, the trial court found that any sentence of longer than thirty months would be "the infliction of useless pain and suffering on the defendant that would not serve any purpose, any valid sentencing purpose."
The State applied for writs, which were denied by the Fourth Circuit. State v. Johnson, 96-0447 (La.App. 4th Cir. 4/17/96), unpub. This Court granted writs and in a per curiam opinion vacated and remanded, stating:
Louisiana's judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762 (La.1979). However, in order to find the punishment mandated by La. R.S. 15:529.1 excessive, the trial judge must find that the sentence makes no measurable contribution to the acceptable goals of punishment or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276 (La.1993).
Although the trial judge gave reasons for his sentence, it does not appear that he made a sufficient showing on the record to say that imposition of the statutorily mandated minimum sentence would be constitutionally excessive under these facts. Moreover, even assuming the statutorily-mandated minimum sentence was excessive under these facts, the trial judge failed to justify his reduction of the sentence down to thirty months. See State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669. Accordingly, the judgment of the trial court is vacated and the case remanded to the trial court to justify its deviation from the statutorily-mandated minimum sentence in this case.
State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552.
On remand the trial court again imposed a sentence of thirty months, stating that it was:
now definitively and confidently stating that I am deviating below the mandatory, minimum of twenty years because such a sentence makes no measurable contribution to the acceptable goals of punishment and that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
Since the trial court noted that this statement could be viewed as only "boilerplate language", it went on to explain its reasons for deviating from the mandatory minimum sentence.
The court first looked at the fact that while Johnson was convicted of possession of cocaine, it believed that in many other jurisdictions he would have only been prosecuted for possession of drug paraphenalia.
The court then focused on Johnson's prior convictions, stating that Johnson had a history of non-violent crimes. The trial court noted that:

*675 [h]ad Mr. Johnson had a prior history of violent acts or had Mr. Johnson; that is, the defendant had been convicted of being in possession of a significant amount of drugs, a deviation from the mandatory sentence would not be warranted. However, given the particular and peculiar facts of this case, such a sentence would not make a measurable contribution to the acceptable goals of punishment.
The trial court next looked at the goal of sentencing. Finding that the goal of a sentence is to rehabilitate the defendant, the court said that to "arbitrarily" impose a twenty-year mandatory sentence destroyed any hope of rehabilitation as a goal. Instead, it said the only reason to impose a twenty-year sentence is punishment. Yet the trial court felt that sentences have societal benefits to society beyond simply punishment.
The trial court said that it understood the problem that drugs are in society, and noted that all drug cases involve to some extent both personal destruction and violence. When a particular case deals mostly with violence, the trial court said that the mandatory minimum sentence was warranted. However, if a case deals with personal destruction, mandatory sentences were not warranted. Since Johnson's prior convictions were non-violent and the facts of his instant conviction dealt mainly with his own personal destruction, a sentence of twenty years was unconstitutional. Given the circumstances of Johnson's case, the trial court found that a sentence of thirty months was proper.
The State applied for a writ, which was granted by the Fourth Circuit. State v. Johnson, 97-0403 (La.App. 4th Cir. 4/16/97), 693 So.2d 246. The Fourth Circuit stated that while the trial judge's reasons for sentencing appeared satisfactory, two cases by the Louisiana Supreme Court suggested otherwise. The Fourth Circuit found specifically that State v. Gordon, 96-0427 (La.5/10/96), 672 So.2d 669, suggests to the courts that "first [] nonviolent crimes per se are not a sufficient reason to find the statutorily mandated minimum sentence constitutionally excessive, and second that the greater the reduction of the sentence, the more convincing the reasoning must be." Johnson, 97-0403 at 5, 693 So.2d at 248. Since the Gordon decision suggested that a non-violent history was not a sufficient reason to reduce a sentence, the Fourth Circuit held that the trial court did not adequately justify its sentence of thirty months. Therefore it vacated the defendant's thirty month sentence and remanded the case to the trial court for re-sentencing.
On remand the trial court imposed a sentence of thirty months for the third time, stating its belief that it had complied with State v. Dorthey, supra. The Fourth Circuit denied writs, finding that the reasons cited above combined with the trial court's earlier reasons for sentencing substantially complied with State v. Dorthey, supra. State v. Johnson, 97-1346 (La.App. 4th Cir. 6/23/97).

DISCUSSION

STANDARD OF REVIEW FOR EXCESSIVENESS UNDER STATE V. DORTHEY

Before addressing whether the district court properly sentenced Walter Johnson below the mandatory minimum required by the Habitual Offender Law, we first look at when a sentence lower than the minimum sentence mandated by the Habitual Offender Law is permitted under State v. Dorthey, supra.
It is important to understand the roles both the Legislature and the judiciary have in sentencing persons for their criminal activity. The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § I; State v. Dorthey, supra at 1280; State v. Taylor, 479 So.2d 339, 341 (La.1985). Acting pursuant to this authority, the Legislature passed the Habitual Offender Law. This Court, on numerous occasions, has held this statute to be constitutional. See, e.g., State v. Dorthey, supra; State v. Badon, 338 So.2d 665, 670 (La.1976). Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, 94-1636 (La. App. 4th Cir. 10/26/95), 663 So.2d 525.
*676 Given the above, it is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. This does not mean, however, that the judiciary is without authority to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case. Instead, we have held that courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). In State v. Dorthey, supra, this Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. Id. at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive.
What exists, then, is a delicate balance between the Legislature and the judiciary. On one hand, the Legislature has the constitutional authority to determine the appropriate penalty for a crime. On the other hand, the judiciary has the authority, in the rare case, to declare a sentence within these statutory limits excessive under the facts of a particular case. The issue for this Court is to determine under what rare circumstances a sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Law.
In State v. Dorthey, supra, this Court held that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment", or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." Id. at 1280-81. Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, supra. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Young, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).
When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory *677 minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.
Finally, if a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the Habitual Offender Law, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances. Instead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. Requiring a sentencing judge to re-sentence a defendant in this manner is in keeping with the judiciary's responsibility to give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender.
We emphasize to sentencing judges that departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. As Chief Justice Calogero noted in a prior case:
The substantive power to define crimes and prescribe [sic] punishments lies in the legislative branch of government. [citation omitted]. Our decision in State v. Dorthey, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case. Dorthey gives the district court the authority to depart from the mandatory minimum sentences provided by the legislature only in those relatively rare cases in which the punishment provided violates the prohibition of La. Const. art. I, § 20 against excessive sentences.
State v. Hamilton, 95-2462 at p. 1 (La.2/2/96), 666 So.2d 655, 656 (Calogero, C.J., concurring); see also State v. Dorthey, supra (Marcus, J., concurring) (noting that situations where sentencing courts should sentence defendants below the minimum mandated by the Habitual Offender Law are "rarely presented").

REVIEW OF SENTENCE
We now examine if the twenty year minimum sentence required by the Habitual Offender Law has been clearly and convincingly shown to be excessive under the facts and circumstances of this case. Since the minimum is presumed constitutional, we examine the reasons given by the trial court for imposing only thirty months imprisonment. First, the sentencing judge stated that if the defendant had a prior history of violent acts, "a deviation from the mandatory sentence would not be warranted." As previously discussed, with regard to third and fourth felony offenders, a lack of prior violent crimes has already been factored into the minimum sentence under the Habitual Offender Law. If this defendant had been convicted of a violent crime in this case or any of his prior felonies, the Habitual Offender Law would have mandated life imprisonment without benefit of parole, probation or suspension of sentence. LSA-R.S. 15:529.1A(1)(b)(ii).
Second, the trial judge stated that if the defendant had been convicted of being in possession of a significant amount of drugs, a deviation from the mandatory sentence would not be warranted. The defendant was caught smoking crack cocaine. Whether at the time he was caught he had a full crack *678 pipe or only residue is insignificant under the law. Either amounts to possession of a Schedule II CDS, punishable up to five years with or without hard labor as a first felony offender. If the defendant had had significantly more cocaine in his possession, he was perhaps in jeopardy of being convicted of (1) possession with intent to distribute (5-30 years at hard labor, at least five years without probation, parole or suspension of sentence), or (2) possession of larger quantities of cocaine (penalties up to 30-60 years at hard labor).
Third, the sentencing judge stated that the sentencing goal of rehabilitation was destroyed by the minimum sentence. While we have no doubt that rehabilitation is one goal of sentencing, deterrence and punishment are also goals, especially with repeat offenders. A twenty year sentence in this case clearly contributes to the sentencing goals of punishment and deterrence.
Finally, the trial court stated that crimes of personal destruction did not warrant mandatory sentences. However, this policy decision is for the Legislature to make, not the judiciary. Even so, drug possession/use clearly does not effect only the user, but society in general through higher medical costs, higher unemployment rates, loss of tax revenue from those unemployed, etc. Other losses to society include theft or theft related crimes committed to support the drug habit. Here, this defendant, a cocaine user, had previously been convicted of three prior felonies, all theft or theft related (illegal possession of stolen things and theft).
Since the defendant failed to clearly and convincingly show that the mandatory minimum sentence for him as a fourth felony offender is excessive, the sentence of the trial court is vacated and set aside. The case is remanded to the trial court with instructions to obtain the defendant's presence in court and to sentence him to a determinate term of incarceration of no less than the minimum required under the Habitual Offender Law, with credit for the time defendant has already served for this conviction.

DECREE
Sentence of the trial court is vacated and set aside. Case remanded to trial court with instructions to obtain the defendant's presence in court and sentence him for a determinate term of incarceration of no less than the minimum required under the Habitual Offender Law, with credit for the time defendant has already served for this conviction.
SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.
LEMMON, J., concurs.
JOHNSON, J., dissents.
LEMMON, Justice, concurring.
The Supreme Court of the United States has provided guidance for determining the excessiveness of a sentence for a habitual offender. In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court concluded that a life sentence without possibility of parole for a habitual offender was unconstitutionally excessive when the charged crime was "uttering a `no account' check," a nonviolent crime not involving the person, and the six prior offenses were relatively minor, were all nonviolent, and none was a crime against the person. Id. at 280-81, 103 S.Ct. at 3005.
The present case falls short of the Helm criteria, primarily because the habitual offender sentence here was not as severe.
JOHNSON, Justice, dissenting.
It is completely discretionary with each district attorney as to which cases he will prosecute and which cases he will nolle prosequi. He also decides when to file multiple offender bills leading to severe mandatory minimum sentences.
Since the purpose of the multiple offender legislation is to rid the community of violent repeat offenders, I wonder how the public is being served when a defendant in possession of drug paraphernalia which contains a residual amount of cocaine is charged with possession of cocaine, rather than possession of drug paraphernalia, as well as possession of marijuana which would ordinarily be misdemeanor offenses. Moreover, this defendant's *679 previous convictions for illegal possession of stolen property (twice) and theft do not characterize him as a violent offender.
Our citizens often complain about the amount of their tax dollars spent annually to maintain those incarcerated, and about the limited jail space, which should be reserved for occupancy by violent criminals or those convicted of more serious crimes. This defendant, although a multiple offender, with a history of drug use, has no history of violent crimes.
There are hundreds of non-violent offenders incarcerated in Louisiana prisons because they were addicted to drugs and did not have the financial resources for detoxification and rehabilitation in a medical facility. We as a society are more forgiving when professionals commit non-violent crimes to fund their addiction.
A sentence is constitutionally excessive when it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992), citing State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Lobato, 603 So.2d at 751, citing State v. Hogan, 480 So.2d 288 (La.1985).
Walter Johnson has already served the thirty (30) month sentence imposed by the trial court and returned to the community, a circumstance with significant due process implications for any attempt to reincarcerate him.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] This case was consolidated with State of Louisiana v. Donald Johnson, (La.1998), 709 So.2d 679. However, we have rendered a separate opinion in each case.
[2] Walter Johnson was released from prison under the thirty-month sentence imposed by the trial court on July 18, 1997. One issue which arises from his release is whether the question of the legality of his thirty-month sentence was rendered moot by his release from prison.

We do not find the issue moot. La.C.Cr.P. art. 882 says that "[a]n illegal sentence may be corrected at any time ... by an appellate court on review" (emphasis added). Comment (a) to Article 882 notes that "[t]he phrase `at any time' makes clear the court's authority to make a correction after the defendant has begun to serve the sentence." No Louisiana case addresses the issue of whether the correction may be made after the defendant has served his sentence, although a similar case from another state held that an illegal sentence may be corrected after a defendant's release from incarceration. See People v. Hill, 202 Mich.App. 520, 509 N.W.2d 856 (1993). Article 882 compels a similar result in Louisiana. Therefore, we find that pursuant to the authority granted the courts by Article 882 this Court may address the legality of Walter Johnson's sentence, despite his release from prison.
[3] Johnson had three prior felony convictions for illegal possession of stolen things between $100 and $500, theft between $100 and $500, and illegal possession of stolen things over $500.