945 So.2d 768 (2006)
STATE of Louisiana
v.
Ronnell L. ANDERSON.
No. 06-KA-372.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
*769 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Parish of Jefferson.
Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Ronnell L. Anderson, appeals from his conviction for distribution of marijuana, adjudication as a fourth felony offender and sentence to 20 years imprisonment at hard labor. For the reasons which follow, we affirm.
On July 20, 2004, the Jefferson Parish District Attorney filed a bill of information charging Defendant with distribution of marijuana in violation of La. R.S. 40:966 A. Defendant was arraigned on August 10, 2004 and pled not guilty. On August 15, 2005, Defendant's motion to suppress identification was heard and denied. The case was tried on August 17, 18, and 19, 2005 before a 12-person jury. The following facts were presented at trial.
*770 Dion Jackson[1], an undercover agent with the Jefferson Parish Sheriff's Office (JPSO), testified at trial that, on October 16, 2003, at approximately 2:50 p.m., he was driving an unmarked pickup truck equipped with video and audio capabilities when he saw Defendant and another man. Jackson asked them if they knew where he could get some "herb," which Jackson explained at trial was the street name for marijuana, and they answered affirmatively. Jackson told them to get in the back of the truck, and they complied.
Defendant instructed Jackson to drive to 1108 Scottsdale Drive.[2] When Jackson pulled up to that address, Defendant exited the vehicle and asked Jackson how much marijuana he wanted. Jackson asked Defendant whether he was selling "nickels" or "dimes," which Jackson explained at trial meant five-dollar or ten-dollar bags of marijuana, respectively. Defendant responded that he was selling "nickels," so Jackson told him to give him four bags. Jackson testified that Defendant then left and walked out of his sight into one of the alleyways between the four-plexes. When Defendant returned, he handed Jackson four yellow bags containing marijuana, and Jackson gave him twenty dollars. The videotape of the transaction was played for the jury.
Jackson described Defendant as being a black male with a medium to thin build and gold teeth, wearing blue jeans and a blue shirt with the number "77" on it. He identified Defendant in a photographic lineup on October 20, 2003.
JPSO Sergeant Corey Wilson testified at trial that he was in an unmarked vehicle across the street where he watched the transaction between Jackson and Defendant take place. He explained that his role in the investigation was to monitor the transaction in case something went wrong. After the sale, Wilson contacted JPSO Detective Leonard Brown to come into the area and detain Defendant. Once Brown did so, Wilson left.
Brown testified at trial that he approached Defendant and asked him his name, date of birth, height, weight, and address. Brown indicated that he had been advised that Defendant was wearing blue jeans and a blue shirt with the number "77" on it. Defendant told Brown that his name was "Ronnell Haywood," but he eventually admitted that his name was "Ronnell Anderson." Defendant also provided the other information that Brown was seeking which Brown wrote down on a field interview card.
Daniel Waguespack, a JPSO forensic scientist, testified at trial that he analyzed the four yellow Ziploc bags containing green vegetable matter in connection with this case. He concluded that each bag contained marijuana, and that the marijuana weighed a total of 5.6 grams.
After the state rested its case, the defense re-called Jackson as a witness. Jackson testified that he viewed the videotape of the transaction during the photographic lineup process; however, he did not remember how many times he did so.
After hearing the testimony and considering the evidence, the jury found Defendant guilty as charged. On October 11, 2005, Defendant filed a motion for post verdict judgment of acquittal and a motion for new trial that were denied. The trial court sentenced Defendant on February *771 23, 2006 to imprisonment at hard labor for 15 years to run concurrently with any other sentences he might be presently serving.
On that same date, the state filed a multiple bill alleging Defendant to be a fourth felony offender to which Defendant stipulated.[3] The trial court vacated the original sentence and sentenced Defendant to imprisonment at hard labor for 20 years to run concurrently with any other sentence defendant was serving. On March 2, 2006, Defendant filed a motion to reconsider sentence which was denied and a motion for appeal that was granted. It is from this conviction and sentence that Defendant appeals.
On appeal, Defendant only assigns one error regarding his sentence. He argues that the imposed sentence is excessive. More specifically, Defendant argues that such a lengthy term of imprisonment should be reserved for violent offenses; that the sentence greatly exceeds the length of sentences imposed for murder in many jurisdictions in the United States; that it does not make sense to impose such a lengthy sentence for distribution of a natural substance, even if trading in that substance is illegal; that the degree of harm, if any, occasioned by the use of marijuana does not warrant such an extreme punishment; that the amount of marijuana involved was small; and that such a grave sentence for such an offense shocks the conscience of any fair-minded person.
The State responds that the sentence was not constitutionally excessive. The State argues that the imposed sentence was the mandatory minimum sentence Defendant could receive after he was found to be a fourth felony offender. Moreover, since the sentence is not outside the bounds of the statute it is presumed valid and the Defendant offered no evidence to the contrary.
The Louisiana Constitution of 1974, Art. I, § 20 provides, in pertinent part, that "[n]o law shall subject any person to . . . excessive . . . punishment." Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. Id.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. Smith, 01-2574 at p. 6, 839 So.2d at 4. On appellate review, the relevant question is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. Smith, 01-2574, at pp. 6-7, 839 So.2d at 4.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906, p. 6 (La.3/4/98), 709 So.2d 672, 675; State v. Mims, 00-1507, p. 6 (La.App. 5th Cir.12/26/01), 806 So.2d 760, 765. However, if the trial judge finds that an enhanced punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" *772 or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993); State v. Johnson, 03-620 at p. 14, (La.App. 5th Cir.10/28/03), 860 So.2d 180, 189-190. Nevertheless, downward departures from a mandatory minimum sentence should occur only in rare situations. Johnson, 97-1906 at p. 9, 709 So.2d at 676.
A trial court may depart from the minimum sentence only if it finds clear and convincing evidence rebutting the presumption of constitutionality. Johnson, 97-1906 at p. 7, 709 So.2d at 676. In order to rebut the presumption, the defendant has the burden of showing that:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting State v. Young, 94-1636 (La. App. 4th Cir.10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223). This evidence must be substantial. Johnson, 97-1906 at p. 7, 709 So.2d at 676. Thus, the "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." Young, 94-1636 at p. 5, 663 So.2d at 528. See also: State v. Bell, 97-1134, p. 14 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
A defendant's "record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive" because the Habitual Offender Law has already taken into account the question of a defendant's history of violent or non-violent offenses. State v. Johnson, 97-1906 at pp. 7-8, 709 So.2d at 676. The mere allegation of being a non-violent habitual offender and a drug addict is not sufficient to find the mandatory minimum sentence excessive. State v. Harbor, 01-1261, p. 7 (La.App. 5th Cir.4/10/02), 817 So.2d 223, 227, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388.
In this case, the record indicates that at the time Defendant committed this offense, he was 25 years old and already had three previous felony convictions. Although the prior convictions were not for crimes of violence, that is not enough to warrant a downward deviation of the Defendant's sentence from that which is statutorily mandated. Moreover, it is clear from his record Defendant is likely to commit another offense. Since the Defendant has not put forth other evidence, he has not proven clearly and convincingly that a downward deviation from the mandatory sentence is warranted. Therefore, after review of the record, we find that the imposed sentence of 20 years at hard labor for this Defendant is not constitutionally excessive.
ERROR PATENT REVIEW
Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990) regardless of whether a defendant makes such a request. Our review of the record reveals no errors which require corrective action by this Court.[4]
*773 Accordingly, for the reasons stated above, the Defendant's conviction for distribution of marijuana and his sentence as a fourth felony offender to 20 years imprisonment at hard labor are affirmed.
CONVICTION AFFIRMED SENTENCE AFFIRMED.
NOTES
[1] Jackson later testified that his real name was Gene Dixon, and that he used an alias for safety reasons.
[2] Sergeant Corey Wilson later testified that the JPSO had received several complaints regarding narcotics transactions in the Scottsdale area.
[3] The record contains a document entitled "Waiver of Rights-Plea of Guilty as Multiple Offender under La. R.S. 15:529.1" indicating that in return for his guilty plea Defendant was promised a 20 year sentence. The form was signed by Defendant, defense counsel and the trial judge.
[4] We note, however, that the Supreme Court has instructed appellate courts to refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint. State v. Campbell, 01-0329 (La.11/2/01), 799 So.2d 1136. Furthermore, while it has been held that this Court has the authority to correct an illegal sentence, it has also been held that this authority is permissive. State v. Jordan, 02-0820, p. 5 (La.App. 5th Cir.12/30/02), 836 So.2d 609, 614.