MAX N. TOBIAS, JR., Judge.
| j Larry Lawrence, Jr. (“Mr. Lawrence”) appeals his life sentence for his conviction for second degree murder, requesting only a review of the record for errors patent. Finding no errors, we affirm.
The state obtained an indictment on 2 April 2004, charging Mr. Lawrence with the first degree murder of Lionel Freeman, Jr. (“Lionel”), a twenty-month-old child. The state later amended the charge to second degree murder. On 18 March 2009, a twelve-person jury found Mr. Lawrence guilty as charged. On 24 June 2009, the trial court denied his motions for new trial and post-verdict judgment of acquittal. Mr. Lawrence announced readiness *558 for sentencing, and the court imposed the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.
On appeal, this court affirmed Mr. Lawrence’s conviction but vacated his sentence, partially on the basis that the trial court indicated that it could not consider a lesser sentence than the mandatory one set forth in La. R.S. 14:30.1. State v. Lawrence, 09-1637 (La.App. 4 Cir. 8/25/10), 47 So.3d 1003.[1] We remanded the case for the trial court to rule upon an outstanding motion for reconsideration of sentence and |2to conduct an evidentiary hearing wherein Mr. Lawrence would be permitted to present any evidence to support his claim that a life sentence imposed in his case would be unconstitutionally excessive as per State v. Dorthey, 623 So.2d 1276 (La.1993).
On remand, the trial court conducted an evidentiary hearing on 10 June 2011, at the conclusion of which the court re-imposed the life sentence at hard labor without benefit of parole, probation, or suspension of sentence. The court then denied Mr. Lawrence’s motion to reconsider sentence and granted his motion for appeal.
At the evidentiary hearing on remand, the defense presented the testimony of Hilda Lawrence (“Ms. Lawrence”), Mr. Lawrence’s mother; Sherry Lawrence (“Sherry”), his sister; and Mr. Lawrence. Ms. Lawrence asked the court to impose a sentence of less than life imprisonment because she believed that Mr. Lawrence did not commit the crime. She stated that Mr. Lawrence called her on the night that Lionel’s mother, Kay Williams (“Ms. Williams”), dropped Lionel off at the house that Mr. Lawrence shared with his girlfriend, Angela Gerdes (“Ms. Gerdes”). Ms. Lawrence stated that Mr. Lawrence told her that Ms. Williams had a coat over Lionel when he arrived, and Ms. Williams put the baby in the bed before leaving. Ms. Lawrence testified that she heard that Lionel had bruises all over his body on the days before his murder. She insisted that Ms. Williams inflicted the injuries that caused Lionel’s death.
Sherry attempted to testify as to Ms. Gerdes’ reason for moving in with her after Lionel’s death, but the court disallowed the testimony as irrelevant to the issue before it. Sherry then testified that Mr. Lawrence was a good brother to her and watched her three children and their sister’s seven children without incident. |sShe testified that Mr. Lawrence practically raised her seventeen-year-old son, and she characterized Mr. Lawrence as a gentle person who was always there to help her. She stated that she did not believe that Mr. Lawrence killed Lionel.
Mr. Lawrence explained that the charge against him was a mistake that arose from his desire to help Ms. Gerdes and her children. He testified that the investigating officers told him that because Ms. Gerdes admitted in her statement that she entered the room where Lionel and the other children were, in order to check on them, they were going to charge her with the murder and would take away her children. He stated that he tried to tell them that Ms. Williams was responsible, but the officers did not want to hear about her. He testified that the officers convinced him that they would release Ms. Gerdes if he admitted that Lionel was injured while they were playing, and they would speak with the district attorney in order to help him; he did not know that he would be charged with second degree murder.
*559 Mr. Lawrence denied entering the room where the children, including Lionel, were sleeping, until the next morning. He stated that Ms. Gerdes entered the room around 11:00 p.m. to check on the children, but he insisted that he was asleep in bed by that time. He maintained that he did not know what condition Lionel was in when Ms. Williams brought him over the night before because she had him covered with a coat. He denied seeing Ms. Williams put Lionel to bed, and he denied punching or squeezing Lionel. He stated that he only entered the room the next morning with Ms. Gerdes to awaken the children for school, and at that time Ms. Gerdes’ oldest child told him that Lionel had vomited. He testified that he pulled back the cover and discovered a red substance all over Lionel and the bed. He stated that he noticed Lionel was not breathing when he picked him |4up. He testified that he changed Lionel’s diaper (the old one was falling off) and called 9-1-1. He stated that he attempted to perform CPR, and then his neighbor arrived and took over that task. However, no one could find the neighbor by the time of trial. Mr. Lawrence reiterated that the police wanted him to confess to causing the injuries, and they threatened to charge Ms. Gerdes with some sort of drug offense and take her children away if he did not do so.
Defense counsel also gave the court written statements from other people who were not present. Defense counsel stated that she had hired a private investigator to locate witnesses in Mr. Lawrence’s behalf.
At the conclusion of the hearing, the court found that the fact that Mr. Lawrence denied committing the crime was not new evidence in that he had always maintained that he did not commit it and that his trial counsel played Ms. Williams’ statement for the jury. The court' noted that the written statements that defense counsel supplied merely gave details and facts about the case, but they did not address the excessive nature of the mandatory life sentence. Nonetheless, the jury found him guilty of second degree murder. The court then stated:
And I’ve not heard anything that would persuade this Court under State v. Johnson[2] that the imposition of pain and suffering [sic], or that it’s out of proportion to the crime, which this was a two-year old child that was killed.
Medical evidence was presented, and the jury believed beyond a reasonable doubt that you killed Lionel Freeman.
The court, finding that the defense had presented no evidence to convince it to deviate from the mandatory sentence reimposed the life sentence without benefit of parole, probation, or suspension of sentence.
|fiBy his sole assignment of error, Mr. Lawrence requests a review of the record for errors patent. His counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). His counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. His counsel moved to withdraw because she believes, after a conscientious review of the record, that no non-frivolous issue for appeal exists. Counsel reviewed the record and found no trial court ruling that arguably supports the appeal. A copy of counsel’s brief was forwarded to Mr. Lawrence, and this court informed him that he had the right to file a brief in his own *560 behalf. Although this court forwarded Mr. Lawrence a copy of the record, he has failed to file a brief. Thus, this court’s review is limited to errors appearing on the face of the record. La.C.Cr.P. art. 920.
Because this appeal has been taken from resentencing only, and our opinion in Mr. Lawrence’s earlier appeal indicated that our review of the record revealed no patent errors, our review in the present appeal is limited to events that happened on remand. Mr. Lawrence was present and represented by counsel at his evidentiary hearing and at resentencing. This court’s review reveals no patent error and no non-frivolous issue or trial court ruling that arguably supports the present appeal.
Accordingly, we affirm Larry Lawrence, Jr.’s sentence. We also grant appellate counsel’s motion to withdraw as counsel for Mr. Lawrence.
AFFIRMED; MOTION TO WITHDRAW GRANTED.

. The detailed facts of Mr. Lawrence’s conviction are set forth in our prior opinion and we will not repeat them here.

. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.