STEWART, J.,
dissenting.
IjThe majority determined that Thompson’s sentence was not excessive, since he “failed to put forth any facts or arguments which supports a conclusion that he clearly and convincingly falls within the category for which departure from the mandatory life sentence is required.” For the following reasons, I respectfully dissent.
In State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender law makes no measurable contribution to acceptable goals of punishment, or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive. (Emphasis added.)
In State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, the Louisiana Supreme Court further qualified the Dorthey holding permitting a downward departure from a mandatory minimum sentence in the context of the Habitual Offender Law. Specifically, the court held that to rebut the presumption that the mandatory minimum sentence was constitutional, the defendant had to “clearly and convincingly” show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

State v. Johnson, supra.

12When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. State v. Wilson, 37,555 (La.App. 2 Cir. 11/6/03), 859 So.2d 957. Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Id. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. Id. Johnson emphasized that a downward departure from the mandatory minimum of La. R.S. 15:529.1 should only occur in “rare situations.” State v. Johnson, supra.
A trial judge may not rely solely upon the nonviolent nature of a crime before the court or of past crimes as evidence that justifies rebutting the presumption of constitutionality. State v. Johnson, supra. While a defendant’s record of non-violent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive. Id.
In the instant case, the trial judge sentenced the defendant to life imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence. Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when ^determining if the defendant falls within those “rare” circumstances where a downward departure is warranted. State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3056 (La. 4/1/99), 741 So.2d 1282.
This case is a prime example of “being in the wrong place at the wrong time.” The defendant was visiting a friend in room 29 of the Levingston Motel. While *669 en route to the motel dumpster, he was detained by the Shreveport Police Department’s Special Response Team, as they attempted to execute a search warrant on rooms 81 and 37 of the Motel. Neither this defendant, nor the apartment he was visiting, were the target of the search warrant. Additionally, the defendant’s truck was not parked in front of the targeted apartments. When Agent Shawn Parker asked the defendant his reason for being there and how he had gotten there, the defendant responded that he was visiting a friend and pointed to his truck in the parking lot. The defendant subsequently signed a consent form to have his vehicle searched. He then entered his truck and produced a clear plastic bag containing five individually packaged rocks of crack cocaine from the center armrest of the bench seat.
The defendant testified that he informed Agent Parker that he smoked crack. He further testified that he had a “little heart attack a while back,” and that the crack cocaine “relieved some pain and takes your mind off of a lot of things.” The record does not contain any testimony or evidence that the defendant was actively distributing any drugs. Although the defendant pled guilty to distribution of Schedule II CDS in his previous drug conviction, we note that he was initially billed for possession with intent to distribute a Schedule II CDS, as well. The defendant’s admission to use of |4crack cocaine, coupled with his previous drug conviction and other nonviolent offenses, strongly supports the theory that this is an unfortunate case of a drug-addicted man.
The defendant clearly falls within that rare category of the “atypical” defendant, where the defendant’s situation is not adequately addressed by the legislature’s prescribed sentence to life imprisonment without benefit of probation, parole, or suspension of sentence. That is, the legislature mandated sentence is not tailored to the culpability of this offender, the gravity of his offenses and the circumstances of this case. State v. Wilson, supra; State v. Johnson, supra.
The defendant’s fourth habitual offender bill of information provided me with the defendant’s criminal history. The four convictions prior to the instant possession with intent to distribute Schedule II, CDS, resulted in prison terms of eight years (ordered to be served concurrently), eight years (ordered to be served concurrently), four years (one year without benefits with credit for time served), and five years. These non-violent offenses and resulting sentences are not to be taken lightly. However, they do not reach a level of culpability and gravity warranting a life sentence.
I do not dispute the fact that the defendant in this case needs a period of incarceration. However, I find clear and convincing evidence that the instant case involves an atypical defendant who has fallen victim to the legislature’s failure to assign sentences that are meaningfully tailored to him. Since the trial court imposed a life sentence pursuant to La. R.S. 15:529.1, he did not comply with La. C. Cr. P. art. 894.1 when sentencing |Bthe defendant. As a result, the record is void of any reasons for the sentence imposed, or any mitigating factor which may be present.
The defendant’s life sentence is disproportionate to the harm done and definitely shocks one’s sense of justice. State v. Lobato, 603 So.2d 739 (La. 1992). Therefore, I cannot conclude that this life sentence is not excessive under the constitutional standard. For these reasons, I would recommend that we vacate the life sentence imposed by the district court and *670 remand to the trial court for re-sentencing accordingly.
Therefore, I respectfully dissent.