ROBERT A. CHAISSON, Judge.
| ..Defendant, Norman Dean, appeals his conviction for simple burglary of an inhabited dwelling and his sentence, as a third felony offender, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the reasons set forth herein, we affirm defendant’s conviction and sentence; however, we remand the matter for correction of an error patent noted herein.

STATEMENT OF THE CASE

On September 6, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant with simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2. At his arraignment, defendant pled not guilty. Defendant then filed a motion to appoint a sanity commission to determine his competency to stand trial. Following a hearing on April 25, 2012, the trial judge determined that defendant was competent to stand trial.
| ..¡Thereafter, on February 21, 2013, defendant withdrew his not guilty plea and pled not guilty and not guilty by reason of insanity. The matter proceeded to a bench trial on May 15 and 22, 2013. After considering the evidence presented, the trial judge found defendant guilty as charged. On May 30, 2013, the trial court sentenced defendant to imprisonment at hard labor for eight years, with the first year to be served without benefit of parole, probation, or suspension of sentence.
The State thereafter filed a multiple offender bill of information, pursuant to the provisions of LSA-R.S. 15:529.1, alleging defendant to be a third felony offender. On June 20, 2013, after a hearing, the trial judge found defendant to be a third felony offender, vacated the original sentence, and resentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS

On May 21, 2011, at approximately 3:45 a.m., Regina Molony, her husband, and her son were upstairs in their Metairie home when she and her husband heard unusual noises downstairs and then a very loud crash. The noises seemed to be coming from their “mud room,” which was where the back door was located. Mrs. Molony then called 911.
Detective Joseph Waguespack of the Jefferson Parish Sheriffs Office responded to the call. When he arrived, he observed that the glass pane on the rear door was shattered and that there were pry marks on the door near the locking mechanism and the window pane. Detective Wagues-pack also observed a red substance on the shattered glass and what appeared to be droplets of blood that led from the shattered glass door, down the driveway, and up the street. Additionally, a screwdriver was found at the scene.
14A crime scene technician from the Jefferson Parish Sheriffs Office went to the scene and collected the red blood-like substance from the driveway of the residence. Subsequent testing of this substance re *196 vealed that the DNA profile from the sample of blood from the driveway matched the DNA profile of defendant.
After receiving the results of the DNA analysis, Detective Stanley Brown, the officer assigned to the case, spoke to defendant. Defendant, following a verbal advi-sal of his rights, told Detective Brown that he had a drug problem and that on the night of this incident, he was riding his bicycle through the neighborhood when he observed a purse through the glass. He explained that he tried to pry the door open but was unsuccessful. He thereafter broke the glass, reached in, grabbed a purse, and fled. According to Detective Brown, defendant admitted that he took cash out of the purse and disposed of it. He stated that he cut himself in his eye area and was bleeding, which was where the blood on the scene came from.
At trial, defendant testified in his own behalf. According to defendant, at the time of the offense, he was hallucinating, having delusions, and abusing alcohol and drugs. With regard to the details of the offense, defendant claimed that he did not remember where he was during the morning hours of May 21, 2011, nor did he remember having a screwdriver or entering the home. However, he remembered punching the window with his fist, after which he came to his senses. He claimed that he never entered the home, that he did not take anything from the home, and that he did not punch the glass, but rather punched at a hallucination. Although defendant recalled leaving the scene, he did not remember going to the scene. Defendant recalled Detective Stanley Brown coming and talking to him after he was arrested; however, he did not remember giving a statement and claimed that he did not answer the questions Detective Brown posed to him.
[.■¿Defendant further testified that he had suffered from mental illness since he was a child and that when he was five or six years old, he tried to set his father on fire. Although defendant received medications for his mental illness in Orleans Parish Prison, he explained that he was last released from prison on April 10, 2010, and from that date until May of 2011, he only had five days of medication for his mental illness. Defendant also testified that at the time of the offense, he went from living in his family home to living in abandoned buildings. He explained that he could not trust himself around his family and did not want to hurt them, so he was living alone and was homeless on the streets.
In addition to this testimony at trial relating to the actual offense, there was also testimony presented by Dr. Rafael Salcedo, an expert in the field of forensic psychology, and by Dr. Richard Richoux, an expert in the field of forensic psychiatry, regarding defendant’s sanity at the time of the offense. Both doctors examined defendant and additionally reviewed the details of the case, defendant’s admission, and defendant’s medical records prior to reaching an opinion about his sanity.
Dr. Salcedo, who testified for the State, stated that the medical records indicated defendant had a history of being diagnosed with major psychiatric disorders, including schizoaffective disorder, paranoid schizophrenia, psychosis NOS, and cyclothymia, the less severe form of bipolar disorder. Dr. Salcedo stated that defendant also had a history of being “medication noncompli-ant” when he was not in institutional settings.
Dr. Salcedo asserted that defendant was like many people who had a functional mental illness and antisocial personality, which meant that defendant tended to have legal problems and substance abuse problems. Dr. Salcedo noted that defen *197 dant had abused marijuana and heroin. He testified that defendant | (¡suffered from a functional mental illness which had the potential for impacting his ability to distinguish right from wrong; however, he explained that impairment of that ability was a very high bar. Dr. Salcedo stated that a person could be psychotic and still be able to distinguish right from wrong.
Dr. Salcedo testified that defendant’s interview with detectives three weeks after the offense was the closest in time to the offense that he had to review. He noted that during the interview, defendant appeared to have been lucid, rational, and able to discuss with detectives what took place during the offense. Dr. Salcedo asserted that he was also provided with medical records from LSU from 2010, which was approximately six months before the offense, documenting a suicide attempt wherein defendant attempted to overdose with heroin. He stated that defendant had periods of psychosis and lucidity and that defendant was not psychotic when he and Dr. Richoux examined him in January of 2013. He further testified that when he and Dr. Richoux examined defendant the two prior times for competency, he did not have psychotic symptoms. Dr. Salcedo asserted that people who were grossly psychotic and delusional had difficulty recalling past events; however, defendant apparently recalled the incident based on his statement to the police.
Dr. Salcedo testified that he had no evidence linking defendant’s mental illness to the offense. He explained that the offense showed goal-directedness and efforts to avoid apprehension. Dr. Salcedo further explained that any effort to avoid apprehension implied an understanding or appreciation of the wrongfulness of one’s conduct, whereas in the classic “not guilty by reason of insanity” scenario, a person felt what he did was right and justified. He asserted that the logic of a person who wants to avoid apprehension runs counter to the logic of a person who is incapable of distinguishing right from wrong.
17Pr. Richard Richoux, who testified for the defense, said that he had spoken to defendant four times, and that when he was a psychiatrist at the jail, he had seen defendant on multiple occasions to prescribe his medications during his period of incarceration. Dr. Richoux further testified that he and Dr. Salcedo had failed to find evidence that defendant was unable to distinguish right from wrong at the time of the offense. He based this opinion on medical records, conversations with defendant, and defendant’s version of events given to police.
Dr. Richoux stated that medical records showed defendant had a diagnosis of chemical dependency and schizoaffective disorder. Additionally, defendant told him that he was not taking psychiatric medication at the time of the offense but that he was using cocaine mixed with Kool-Aid and injecting it and also smoking crack cocaine. Defendant further told him that he experienced hallucinations around the time of the offense and said he was seeing demons. Defendant recalled leaving the scene of the offense on a bicycle and going to another area of New Orleans.
Dr. Richoux and Dr. Salcedo' also reviewed the summary of the statement defendant gave to deputies shortly after the offense. Dr. Richoux testified that defendant’s behavior appeared to be goal-directed in that defendant saw what he wanted and attempted to get it by one means, and when that failed, he tried another means. Dr. Richoux further testified that this did not indicate psychotic disorganized behavior. He noted that defendant seemed to make efforts to avoid apprehension, which ordinarily implied knowledge of wrongful *198 ness of one’s conduct. Dr. Richoux asserted that it took more than the presence of a mental illness to conclude that a person at a given point and time could not distinguish right from wrong. He further asserted that there was no compelling evidence to say defendant was unable to distinguish right from wrong, and that there was compelling evidence to suggest that defendant could do so.

\ SUFFICIENCY OF THE EVIDENCE

In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him. He does not dispute that the State proved the elements of the offense, but rather contends that he met his burden of proving by a preponderance of the evidence that he did not know right from wrong at the time of the offense, and therefore, he should be exempt from criminal responsibility. Specifically, defendant asserts that the evidence showed that he was experiencing hallucinations and had little contact with reality at the time of the offense; that he suffered from a mental illness since he was a child and was eventually diagnosed with schizoaffective and bipolar disorders; that he had a substance abuse problem that worsened the symptoms of his mental illness; and that he had not taken prescribed medication for his mental illness since 2010, which also worsened his condition.
In reviewing a claim for insufficiency of evidence in an action where the affirmative defense of insanity is raised, the appellate court, applying the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must determine whether under the facts and circumstances of the case, any rational fact-finder, viewing the evidence most favorably to the prosecution, could conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. State v. Williams, 07-1407 (La.10/20/09), 22 So.3d 867, 876, cert. denied, 560 U.S. 905, 130 S.Ct. 3278, 176 L.Ed.2d 1184 (2010); State v. Williams, 10-1010 (La.App. 5 Cir. 9/27/11), 76 So.3d 90, 96.
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility. LSA-R.S. 14:14. However, in Louisiana there is a legal presumption that the defendant is sane and responsible for his actions. LSA-R.S. 15:432; State v. Williams, 22 So.3d at 875. Therefore, to overcome this presumption of sanity, the defendant has the burden of proving by a preponderance of the evidence that he suffered a mental disease or a mental defect which prevented him from distinguishing between right and wrong with reference to the conduct in question. LSA-C.Cr.P. art. 652; State v. Armstrong, 94-2950 (La.4/8/96), 671 So.2d 307, 309.
Sanity is a factual matter for the trier of fact, to be determined from all of the evidence, both lay and expert, along with circumstances surrounding the events and testimony relating to the defendant’s behavior before, during, and after the crime. A determination of the weight of the evidence is a question of fact that rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all of the evidence most favorable to the prosecution must be adopted. State v. Williams, 22 So.3d at 875-876.
At trial, the judge was presented with expert testimony from a forensic psy *199 chologist and a forensic psychiatrist, both of whom examined defendant and reviewed the details of the case, defendant’s statement to the police, and defendant’s medical records. Dr. Salcedo testified for the State that defendant suffered from a mental illness which had the potential for impacting his ability to distinguish right from wrong; however, Dr. Salcedo further testified that he had no evidence linking defendant’s mental illness to the offense. He explained that the offense showed goal-directedness and efforts to avoid apprehension, which implied that defendant understood or appreciated the wrongfulness of his conduct.
|inThe defense presented the testimony of Dr. Riehoux, who reached the same conclusion as Dr. Salcedo, namely, that he and Dr. Salcedo failed to find evidence that defendant was unable to distinguish right from wrong at the time of the offense. Dr. Riehoux further testified that there was compelling evidence to suggest that defendant could distinguish right from wrong at the time of the offense. Dr. Riehoux explained that defendant’s behavior appeared to be goal-directed, which did not indicate psychotic disorganized behavior. Also, Dr. Riehoux thought, as did Dr. Salcedo, that defendant seemed to make efforts to avoid apprehension, which ordinarily implied knowledge of the wrongfulness of one’s conduct.
In contrast to these-two doctors, defendant testified that he was unable to distinguish right from wrong at the time of the offense because he was hallucinating, having delusions, and abusing drugs and alcohol at that time. Defendant claimed that he punched the window with his fist, after which he came to his senses. However, he explained that he did not actually punch the glass but a hallucination. Defendant further claimed that he did not remember entering the home, and he insisted he did not take anything from the home. He also said he did not remember going to the scene and that he blacked out after he left it.
After hearing the testimony of the witnesses, the trial judge obviously rejected defendant’s testimony and believed Dr. Salcedo and Dr. Riehoux that defendant was capable of distinguishing between right and wrong at the time of the offense, despite the presence of a mental illness. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
| n Considering the totality of the evidence, and viewing the evidence most favorably to the prosecution, we find that a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant failed to prove, by a preponderance of the evidence, his insanity at the time of the offense. Accordingly, the arguments raised in this assigned error lack merit.

EXCESSIVENESS OF SENTENCE

In his second assigned error, defendant challenges his sentence as excessive. As a result of his conviction for simple burglary of an inhabited dwelling, defendant was sentenced to imprisonment at hard labor for eight years, with the first year to be served without benefit of parole, probation, or suspension of sentence. However, after a hearing, the trial court found defendant to be a third felony offender, vacated the original sentence, and resentenced him to the mandatory term of life imprisonment without benefit of parole, probation, or suspension of sentence. In imposing this mandatory sentence pursuant to LSA-R.S. 15:529.1(A)(3)(b), the trial judge noted that the predicate offenses of armed robbery *200 and purse snatching were crimes of violence as defined by LSA-R.S. 14:2, and that the underlying offense, simple burglary of an inhabited dwelling, was punishable by twelve years or more.
Defendant now contends that this sentence is excessive considering that he has been plagued by mental illness all of his life and that he had little chance to control his actions because of his mental condition. In challenging his sentence, defendant further asserts that the trial court gave scant reasons for its sentence and failed to tailor the sentence to him in light of the circumstances of the case. We find no merit to defendant’s argument.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. |12Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
A mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 342, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court specifically held that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Taylor, 06-839 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27-28, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179.
|islt is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, supra at 676; State v. Taylor, 956 So.2d at 28.
*201 Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur' in rare situations. State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 132. The trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. State v. Ventress, 01-1165 (LaApp. 5 Cir. 4/30/02), 817 So.2d 377, 384.
In a case similar to the instant one, State v. Breaux, 00-236 (La.App. 5 Cir. 8/29/00), 767 So.2d 904, writ denied, 00-2874 (La.6/29/01), 794 So.2d 808, the defendant was convicted of simple burglary of an inhabited dwelling and later sentenced as a third felony offender to life imprisonment. On appeal, the defendant argued that his sentence was excessive considering that his prior armed robbery conviction occurred more than 25 years earlier and that he had mental problems that led him to drugs and a life of crime. However, this Court found that the sentence was not excessive, noting that although the defendant’s past history had some tragic events, it also depicted a life of continuous crime. In sentencing the defendant, this Court also noted that the predicate offense was violent and that the mandatory sentencing provision was presumed to be constitutional.
114Likewise, in the instant case, we find that the record supports the life sentence imposed by the trial court. Defendant is a habitual offender with an extensive criminal history, which includes previous convictions for armed robbery, attempted armed robbery, purse snatching, burglary of an inhabited dwelling, and simple burglary. Additionally, defendant does not show the special circumstances necessary to rebut the presumption of constitutionality of his life sentence. Accordingly, we find that the mandatory sentence imposed on defendant was not excessive.

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant has filed a pro se supplemental brief alleging that he received ineffective assistance of counsel pre-trial, at trial, and post-trial. Specifically, he sets forth the following allegations of ineffectiveness:
1) Trial counsel was ineffective for failing' to demand independent experts to evaluate his client’s mental capacity to proceed and at the time of the offense.
2) Counsel was ineffective for failing to inform his client of his right to remain silent during the sanity evaluation, lest any portion of that interview could be deemed evidence against him and used as such.
3) Counsel was ineffective because he allowed waiver of the substantive right to trial by jury to occur while his client’s capacity to proceed remained in question.
4) Counsel was ineffective because he allowed multiple offender proceedings to proceed without any true conceivable challenge to the multiple offender status despite life long insanity issues of his client.
Generally, a claim of ineffective assistance of counsel is best addressed through an application for post-conviction relief filed in the district court where a full evidentiary hearing can be conducted. State v. Lewis, 09-783 (LaApp. 5 Cir. 5/28/10), 43 So.3d 973, 988. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an | ^assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Taylor, 04-346 (LaApp. 5 Cir. 10/26/04), 887 So.2d 589, 595.
While there is sufficient evidence in the record to consider some of the issues raised in defendant’s pro se supplemental brief, the appellate record is in *202 sufficient to address all of his claims of ineffective assistance of counsel. Therefore, we find it best that defendant’s claims be considered in their entirety by the trial court on post-conviction relief at an evidentiary hearing.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record in this case reveals an error in the “State of Louisiana Uniform Commitment Order.” The Uniform Commitment Order reflects that the date of offense was July 6, 2011; however, the date of offense was actually May 21, 2011. To ensure accuracy in the record, we remand this case for correction of the Uniform Commitment Order to reflect the correct date of the offense. We further direct the trial court to make the appropriate entry on the Uniform Commitment Order reflecting this change and direct the Clerk of Court to transmit the original of the Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Correction’s Legal Department. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.
For the reasons set forth herein, we affirm defendant’s conviction and sentence. The matter is remanded for correction of an error patent as noted herein.

J^CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.