STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 1114

STATE OF LOUISIANA

VERSUS

JACOB FAY LUKE

Judgment Rendered: __MAY 1 8 2023__

* * * * *

On Appeal from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No. 794927

Honorable Timothy C. Ellender, Judge Presiding

* * * * *

Jason P. Lyons
Joseph L. Waitz, Jr.
Houma, LA

Attorneys for Appellee,
State of Louisiana

Prentice L. White
Baton Rouge, LA

Attorney for Defendant-Appellant,
Jacob Fay Luke

* * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

The defendant, Jacob Fay Luke, was charged by bill of information with aggravated flight from an officer where human life is endangered, a violation of La. R.S. 14:108.1(C) (count 1); resisting an officer with force or violence, a violation of La. R.S. 14:108.2 (count 2); battery of a police officer, a violation of La. R.S. 14:34.2(B) (count 3); and possession of methamphetamine, a violation of La. R.S. 40:967(C) (count 4). The defendant pled not guilty and, following a jury trial, was found guilty as charged on counts 1 and 2. On count 3, he was found guilty of the responsive offense of attempted battery of a police officer; and on count 4, he was found guilty of the responsive offense of attempted possession of methamphetamine. See La. R.S. 14:27.

The State filed a habitual offender bill of information. Following a hearing on the matter, the defendant was adjudicated a fourth-felony habitual offender.[1] For counts 1, 2, and 3, the trial court imposed an enhanced sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On count 4, the trial court imposed an enhanced sentence of twenty years imprisonment at hard labor.[2] The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating two assignments of error. For the following reasons, we affirm the convictions, habitual offender adjudications, and enhanced sentences.

## FACTS

On the morning of April 11, 2019, Louisiana State Trooper Anthony Dorris was at a red light in Gray, Louisiana, running license plates at random. He ran the

---

[1] The defendant has prior convictions for simple criminal damage to property, illegal discharge of a firearm, carnal knowledge of a juvenile (two convictions), attempted carnal knowledge of a juvenile, failure to register as a sex offender, and felony theft.

[2] The trial court did not specify whether the sentences were to run consecutively or concurrently. Since the trial court did not expressly direct the sentences to run consecutively, and because all four offenses arose from the same act or transaction, the sentences shall be served concurrently. See La. Code Crim. P. art. 883.

2

plate on the vehicle the defendant was driving and learned that the vehicle had a switched license plate. Trooper Dorris got behind the defendant and turned on his lights, but the defendant did not stop. Instead, the defendant turned into Mobile Estates Subdivision.

While pursuing the defendant, Trooper Dorris turned on his siren and his body camera. During the pursuit, the defendant stopped and got out of his vehicle. Trooper Dorris got out of his vehicle with his gun drawn and stayed behind his vehicle's opened door. The defendant then got back into his vehicle and drove away. Trooper Dorris followed him. The defendant turned right onto Champion Street and began accelerating. The defendant ran several stop signs and reached speeds in excess of 55 m.p.h. in a 25 m.p.h speed zone. The defendant then slowed down, exited his car, and ran while his vehicle was still moving. The defendant's vehicle rolled into a ditch on Champion Street, and the defendant ran down Sabrina Drive.

Trooper Dorris ran after the defendant on foot and ordered him to stop. The defendant kept running, and Trooper Dorris called for backup. Trooper Dorris could not see the defendant's right hand and thought he might have a weapon. Trooper Dorris caught up to the defendant on Champion Street and tasered him. According to the trooper, the taser did not work on the defendant. Trooper Dorris fired the taser a second time as the defendant was already stumbling. The taser took effect, and the defendant fell to the ground.

Trooper Dorris sought to control the defendant's hands but could not. According to Trooper Dorris, the defendant was quite a bit bigger than him. Trooper Dorris yelled commands at the defendant, but the defendant ignored him and began getting up. Trooper Dorris continued to struggle with the defendant as he attempted to get his hands behind his back. Trooper Dorris testified that the defendant tried to strike him in the face and kick him in the groin. As they continued to struggle, they

3

rolled into a ditch on the side of the roadway. Trooper Dorris landed on his back, and the defendant landed on top of him.

While in the ditch, Trooper Dorris screamed out for help. Trooper Dorris testified that the defendant continued to strike at him and bit him on the arm. During the fight, Trooper Dorris observed a knife come off the defendant's person. The trooper grabbed the knife and threw it as far as he could. The defendant broke free from Trooper Dorris's grasp, climbed out of the ditch, and began walking away. Trooper Dorris began following the defendant when backup arrived and subdued the defendant. A plastic bag containing methamphetamine was found in the defendant's vehicle.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the trial court erred in allowing into evidence a letter written by him to his sister, Amber Luke, while in jail awaiting trial for the instant offenses. In pertinent part, the defendant wrote:

> say amber pic they offerder me 15 years amber . . . i really reallly need you sis \amber i didn't even do shit to get this much time offeder to me but guess the devil wants me in this bitch fuck i should of just killed that state trooper would of never been all this shit dirty bitch should of killed him sis but i love you so much thanks for not giving up on me[.]

Prior to trial, the defendant filed a motion in limine to challenge the admissibility of the letter. He argues in brief that the letter should not have been allowed into evidence because it was highly inflammatory and written at a time when he was incarcerated and simply venting his frustration with being charged with battery of a police officer. At the hearing on the motion in limine, the defendant argued that the letter was irrelevant and that the State sought to use the letter to make him look like a bad person.[3] The State responded that the defendant was charged

---

[3] The defendant raises a confrontation issue and cites to **Crawford v. Washington**, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) for the first time on appeal. The defendant did not raise any confrontation issue nor mention **Crawford** in either his written motion in limine or in his argument at the hearing on the motion in limine. A new ground for objection cannot be raised for the first time on appeal. See La. Code Crim. P. art. 841; La. Code Evid. art. 103(A)(1); **State v.**

4

with four offenses, including resisting an officer with force or violence. Since the State had to prove the defendant used force or violence, the letter would be used to show intent and as an admission that he had an altercation with the trooper, particularly when he wrote he should have just killed the officer. The State further suggested the letter proved identity.

In denying the defendant's motion in limine, the trial court stated in pertinent part:

> [While] seemingly not admissible to prove other crimes, wrongs, or acts under [La. Code Evid. art] 404(b), these types of statements can be admissible for other reasons.
> The defendant is charged with aggravated flight from an officer; and after reviewing that statute, 14:108.1, one of the necessary elements under Subsection C is that the alleged defendant committed flight wherein human life is endangered.
> The evidence proffered by the notice by the State is independently relevant on the issue of opportunity, motive of the actual crime for which he is charged with.
> So in taking the [La. Code Evid. arts.] 401-403 balancing test as to relevance and prejudice, it's clear that [the defendant] will have the opportunity to argue, testify, otherwise put on evidence to dispute the use for which it's being offered by the State.
> It's not determinative of any issue in the case but it certainly is relevant, and the Court feels as though any prejudice is outweighed by the potential relevance as to motive and opportunity.

We find no reason to disturb the trial court's ruling. As pointed out, the letter was relevant to show motive and opportunity to avoid being charged with any of the offenses. The letter was also relevant to show intent and identity. We further note that as addressed by the State in its argument at the hearing, the defendant's letter had more pertinence regarding the charge of resisting an officer with force or violence because the defendant's suggestion that he should have just killed the officer is highly suggestive of the defendant having been in a physical confrontation with Trooper Dorris in the first instance. The letter also showed absence of mistake; that is, it went to the defendant's state of mind in that he was aware of what he was

---

**Hammond**, 2019-1580 (La. App. 1st Cir. 8/3/20), 310 So.3d 749, 754.

5

doing when he used force or violence against Trooper Dorris. See La. Code Evid. art. 404(B). Accordingly, the letter was relevant; further, it was not unduly prejudicial because it was cumulative of independent evidence of the defendant's criminal acts.

Furthermore, Trooper Dorris's testimony clearly established that the defendant resisted him with force or violence. Therefore, even if the defendant's letter had been improperly allowed into evidence, such admission would have constituted harmless error. See **Sullivan v. Louisiana**, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

The defendant was incarcerated in Terrebonne Parish Jail. His letter was admitted at trial through the testimony of Lieutenant Allison Zeringue, who worked with the messaging system at the jail. The defendant suggests in brief that Lieutenant Zeringue's sole purpose at trial was to "offer" the letter into evidence without providing him with "the ability to cross-examine her" about the context of the message. This is incorrect. At the conclusion of the direct examination of Lieutenant Zeringue, the witness was tendered, and defense counsel elected not to question her.

The defendant further suggests in brief that the State should have called Amber Luke to testify to derive some context behind the defendant's purpose in sending his message to her. The State was under no obligation to call Amber as a witness to provide "context" to the defendant's letter. Furthermore, the defendant could have called his sister as a witness but chose not to.

This assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that his sentences as a habitual offender are unconstitutionally excessive. Specifically, the defendant contends the trial court should have departed from the mandatory minimum

6

sentences.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. **State v. Andrews**, 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See **State v. Holts**, 525 So.2d 1241, 1245 (La. App. 1st Cir. 1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. Code Crim. P. art. 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982). The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981). On appellate review of a

7

sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **State v. Thomas**, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).

In **State v. Dorthey**, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In **State v. Johnson**, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when **Dorthey** permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law.

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it, which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the nonviolent nature of the instant crime or of past crimes as evidence that justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as nonviolent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. **Johnson**, 709 So.2d at 676.

To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored

8

to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. **Johnson**, 709 So.2d at 676-77.

On counts 1, 2, and 3, with each of the sentences enhanced, the defendant was sentenced to mandatory life imprisonment at hard labor on each count. See La. R.S. 15:529.1(A)(4)(c) & La. R.S. 15:529.1(G). The defendant argues he was entitled to a downward departure of these sentences because he had only a sixth-grade education wherein he kept failing his classes due to his psychiatric diagnoses of ADHD and bi-polar disorder.[4] He also had difficulty understanding his rights during his prior guilty pleas, and he needed repeated clarification at the habitual offender hearing before he understood what was occurring in his case.

At sentencing, the trial court specifically addressed the **Dorthey** issue and, in pertinent part, stated:

> I have considered, Mr. Billiot [defense counsel], with a heavy heart the possible application of State v. Dorthey. And despite your valiant effort -- and it is a noble one, sir -- it does not appear to me that Mr. Luke's case qualifies him as "exceptional" in the jurisprudence that has interpreted that.
> I have prepared my reasons for judgment -- I've been working on this today and made a lot of changes, made some changes after the argument, as a matter of fact. But in part, I wrote the following. And this is why the Court is convinced that Mr. Luke provides an imminent danger to the public safety of the Parish of Terrebonne and the State of Louisiana.
> I have considered the sentencing guidelines in Code of Criminal Procedure Article 894.1 and find several of these factors very specific

---

[4] These diagnoses were not verified, but were offered through the testimony of the defendant's sister, Amber Luke.

9

to Mr. Luke.

The Court notes that since 2006, he has committed 11 felonies, three of which were defined as sex crimes involving separate victims under the age of 18 and four crimes of violence. Moreover, the time upon each of his previous convictions -- 2006, 2007, 2010, 2012, 2017 and 2021 -- very demonstrative that the defendant has never purged his record of the cleansing period, and also to show a very in-time close repeat offender.

The defendant was also afforded probation on multiple occasions, yet did not avail himself of any rehabilitative services that if put to use on his part may have thwarted his pattern of recidivism.

Specific to the most recent conviction, the defendant, by virtue of the commission of crimes of violence against Trooper Dorris -- I don't know if I'm getting that correct -- exhibited reckless disregard for life and placed lives, including his own, at extreme peril.

Finally, on multiple occasions the defendant while awaiting trial or otherwise previously benefiting from being placed on probation has committed more crimes, further exhibiting a complete disregard for law, order and rehabilitation.

Mr. Luke has left a number of victims in his past on a pretty timely basis. It gives me no pleasure to do it, Mr. Luke, but I'm compelled by reason, justice, and the law to rule this way.

The defendant received these enhanced sentences because of his continued lawlessness. See **Johnson**, 709 So.2d at 677. Further, he has not pointed to any instances of how his circumstances are unusual or how he is exceptional. There is nothing particularly unusual about the defendant's circumstances that would justify a downward departure from the mandatory sentence under La. R.S. 15:529.1(A)(4)(c). With the defendant's eleven felony convictions over the past fifteen years, including several crimes of violence and sex crimes involving victims under eighteen years old, the record before us established more than an adequate factual basis for the sentences imposed. The defendant has not shown by clear and convincing evidence that he is exceptional such that the sentences would not be meaningfully tailored to the culpability of the offender, the gravity of the offenses, and the circumstances of the case. See **Johnson**, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory minimum sentences is warranted. The sentences imposed are not grossly disproportionate to the severity of the offenses and, therefore, are not unconstitutionally excessive.

This assignment of error is without merit.

**CONVICTIONS, HABITUAL OFFENDER ADJUDICATIONS, AND ENHANCED SENTENCES AFFIRMED.**